**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.

JEFFREY DOUGLAS GROB,
         *Defendant-Appellant.*

No. 09-30262

D.C. No.
9:08-cr-00036-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
May 4, 2010—Seattle, Washington

Filed November 10, 2010

Before: Kim McLane Wardlaw and Ronald M. Gould,
Circuit Judges, and Richard Mills, Senior District Judge.*

Opinion by Judge Wardlaw

---

*The Honorable Richard Mills, Senior United States District Judge for
the Central District of Illinois, sitting by designation.

18471

## COUNSEL

Anthony R. Gallagher, Federal Defender, John Rhodes and Andrew J. Nelson, Assistant Federal Public Defenders, and Jessica L. Weltman, Research and Writing Attorney, Federal Defenders of Montana, Missoula, Montana, for the defendant-appellant, Jeffrey Douglas Grob.

Michael W. Cotter, United States Attorney, and Marcia Kay Hurd, Assistant United States Attorney, Billings, Montana, for the plaintiff-appellee, United States of America.

## OPINION

WARDLAW, Circuit Judge:

Jeffrey Grob, who was sentenced to 37 months imprisonment following his conviction of one count of cyberstalking in violation of 18 U.S.C. § 2261A(2)(B), appeals his sentence, arguing that the district court's criminal history calculation improperly included a prior misdemeanor conviction for criminal mischief. Because Grob's prior Montana criminal mischief conviction should not have been counted under the applicable sentencing guideline, U.S.S.G. § 4A1.2(c), the district court committed procedural error. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc) ("It would be procedural error for a district court to fail to calculate—or to calculate incorrectly—the Guidelines range.") (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). We therefore vacate Grob's sentence and remand to the district court for resentencing.

### I.   BACKGROUND

Jeffrey Grob's girlfriend broke up with him during the summer of 2007 after she suffered a miscarriage. To put it mildly, Grob did not take the end of either the pregnancy or the relationship well. Beginning in October of 2007, Grob sent his ex-girlfriend twenty-two threatening e-mails and fifty threatening text messages. Illustrative of the content of these threats is an excerpt from the text message Grob sent on November 27, 2007, with the subject heading "I'm going to slit your throat":

> If you ever come back to Montana again I am going to slit your throat. I am not even kidding. It would make be fill [sic] so good to see you bleed as you gasp for air. I hope your are [sic] ready for retribution, because it is coming. You are going down bitch.

Photographs of dead and dismembered women accompanied some messages. Grob went so far as to attach a photograph of a dead infant to an e-mail entitled "OMG our baby." In an e-mail entitled "I can't believe you killed our baby," sent on November 12, 2007, Grob wrote that he was not going away and was "not going to forget about the horrible shit you did to me." "Vengeance," he added, "will be mine. I will get you even if it is the last thing I do."

Having reason to fear for her life, Grob's ex-girlfriend contacted law enforcement. When officers interviewed Grob, he initially denied sending the messages, but eventually admitted he sent them to "scare" his ex-girlfriend. Grob was indicted for cyberstalking in violation of 18 U.S.C. § 2261A(2)(B), and was granted pretrial release. Grob's pretrial release was revoked, however, on October 17, 2008, due to his arrest for public intoxication and carrying a concealed weapon. Grob's subsequent conduct was far from exemplary: while in federal custody, for example, he was caught in possession of a home-made knife fashioned out of a razor blade.

Grob ultimately pled guilty to one count of cyberstalking. In the Presentence Investigation Report (PSR), the United States Probation Office recommended a base offense level of nineteen and a criminal history score of four, resulting in a Criminal History Category of III. One of the counted convictions was for vandalizing a house Grob had rented in Flathead County, Montana. In that case, Grob admitted that he intentionally trashed the house in retaliation against his landlord, who had contacted police to break up a party Grob was giving and who later turned off Grob's power and water. Grob was

convicted of criminal mischief in violation of Montana Code Annotated § 45-6-101, fined $130, and ordered to pay a court fee of $80 and restitution of $750.

Over Grob's objections, the district court adopted the PSR's calculation of the criminal history score, which included the criminal mischief conviction, and determined an advisory sentencing range of thirty-seven to forty-six months. Without inclusion of the criminal mischief conviction, the guideline range would have been thirty-three to forty-one months. The court imposed a sentence of incarceration of thirty-seven months, and Grob timely appeals.

## II.  DISCUSSION

We review de novo the district court's inclusion of a prior conviction in the Sentencing Guidelines criminal history calculation. *United States v. Bays*, 589 F.3d 1035, 1037 (9th Cir. 2009).

**[1]** As a general rule, sentences for prior misdemeanor or petty convictions are counted in assigning criminal history points. U.S.S.G. § 4A1.2(c) (2007). Under U.S.S.G. § 4A1.2(c), however, in order "to screen out past conduct which is of such minor significance that it is not relevant to the goals of sentencing," *United States v. Hardeman*, 933 F.2d 278, 281 (5th Cir. 1991); *see also* U.S. Sentencing Guidelines Manual supp. to app. C at 239 (2009), certain enumerated prior offenses and offenses "similar to [those enumerated offenses], by whatever name they are known," are not counted unless: "(A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense," U.S.S.G. § 4A1.2(c); *see also United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1220 (9th Cir. 2005); *United States v. Lopez-Pastrana*, 244 F.3d 1025, 1027 (9th Cir. 2001).

**[2]** Grob was convicted in Montana of committing criminal mischief in 2000. *See* Mont. Code Ann. § 45-6-101 (2009). Criminal mischief is not an enumerated offense under U.S.S.G. § 4A1.2(c)(1). If, however, criminal mischief under Montana law is "similar to" the offense of disorderly conduct, which is enumerated in § 4A1.2(c)(1), then Grob's sentence for criminal mischief should not be counted unless either of the two exceptions in U.S.S.G. § 4A1.2(c) applies.

### A.  Similarity of the Prior Offense to the Enumerated Offense

#### 1.  The "Common Sense" Approach to Determining Similarity

**[3]**  We first address the test for determining "similarity" as used in U.S.S.G. § 4A1.2(c). Before 2007, there was disagreement among the circuits (and even within our own circuit) about what test courts should apply in this context. *See generally Lopez-Pastrana*, 244 F.3d at 1027-30 & nn.2-3. One of the two broad tests articulated by the Ninth Circuit, which was similar to the "common sense" test used by the Second, Fifth, and Seventh Circuits, "[i]n essence" defined "similar to" on "the basis of the underlying seriousness of the offense." *Id.* at 1027 & n.2. The other test, which was similar to the "elements" test used in the First, Third, Fourth, and Eleventh Circuits, defined "similar to" with "reference only to 'whether the activity underlying [the prior offense] is similar to the activities underlying the listed offenses.' " *Id.* at 1027 & n.3 (quoting *United States v. Martinez*, 69 F.3d 999, 1000 (9th Cir. 1995)). In 2007, the United States Sentencing Commission responded by promulgating Application Note 12 to U.S.S.G. § 4A1.2, in which the Commission explicitly adopted the "common sense" test employed by the Second, Fifth, and Seventh Circuits. U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.12 (2009); U.S. Sentencing Guidelines Manual supp. to app. C at 240 (2009); *United States v. Martinez-Santos*, 184 F.3d 196 (2d Cir. 1999); *United States*

*v. Booker*, 71 F.3d 685 (7th Cir. 1995); *Hardeman*, 933 F.2d at 281. Application Note 12 provides

> In determining whether an unlisted offense is similar to an [enumerated] offense . . . the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S. Sentencing Guidelines Manual § 4A1.2 cmt. n.12(A) (2009). Although the guidelines themselves are advisory only, the applicable guidelines sentence must be calculated correctly. *See, e.g.*, *Carty*, 520 F.3d at 993. Commentary in the Application Notes interpreting or explaining a guideline "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *Bays*, 589 F.3d at 1037. In determining the similarity of prior and enumerated offenses, we are therefore guided by Application Note 12 to U.S.S.G. § 4A1.2(c), and so apply the "common sense" approach.

Both the Fifth and Seventh Circuits have employed this approach in addressing whether the crime of criminal mischief (or, in the case of the Seventh Circuit, criminal damage to property) is similar to disorderly conduct. In *United States v. Reyes-Maya*, 305 F.3d 362, 366-67 (5th Cir. 2002), the Fifth Circuit, applying Texas law, began by noting that a comparison of the authorized statutory punishments demonstrated that "the offense of criminal mischief can be more serious than the offense of disorderly conduct," but that "[m]ore important than the statutory range of punishments is the actual

punishment given."[1] The Fifth Circuit also observed that a comparison of the statutory elements of the two crimes "shows both similarity and difference," but that "[t]he fact that the elements are somewhat different is not dispositive," because the "different elements do not necessarily make criminal mischief a more serious offense than disorderly conduct." *Id.* at 367. (citing *Hardeman*, 933 F.2d at 281). Ultimately, the Fifth Circuit concluded that, given the "similarity in punishments between Appellant's criminal mischief conviction and disorderly conduct and . . . the small fine Appellant received suggest[ing] low culpability and low predictiveness of future criminal conduct," criminal mischief under Texas law was similar to the enumerated crime of disorderly conduct. *Id.* at 368. Therefore, the district court had erred by counting Reyes-Maya's criminal mischief conviction. *Id.*

In *Booker*, 71 F.3d at 690-91, the Seventh Circuit similarly concluded that, given the particular circumstances of Booker's prior conviction for damage to property under Illinois law, that crime was similar to the enumerated crime of disorderly conduct. The Seventh Circuit began by observing that a comparison of the two offenses was "complicated by the fact" that both offenses "are crimes of generic definition that proscribe a great variety of activity and, depending on type of behavior involved, can be classified as a minor misdemeanor or a felony." *Id.* at 689. "[T]ak[ing] counsel from our colleagues in the Ninth Circuit," the Seventh Circuit concluded that it should instead "focus not so much on the elements of each offense or on the possible range of punishments *in abstracto*, but rather on the actual offense conduct and the actual penalty deemed appropriate by the sentencing court." *Id.* (citing *United States v. Kemp*, 938 F.2d 1020, 1023 (9th Cir. 1991)). For breaking a window at his girlfriend's apartment, Booker had been sentenced to one month's supervision —a light sentence that "militate[d] strongly in favor of treat-

---

[1]Reyes-Maya had been fined $182.50, an amount "similar to the minor punishments for offenses excluded" under U.S.S.G. § 4A1.2(c). *Id.* at 367.

ing the crime for purposes of this guideline provision as akin to a relatively minor breach of the peace." *Id.* at 689-90. Emphasizing that its decision "does not preclude a contrary result when the circumstances surrounding the commission of the damage to property offense are different," the Seventh Circuit concluded that Booker's conviction for criminal damage to property "was a minor petty offense similar to disorderly conduct and of the sort meant to be excluded under § 4A1.2(c)(1)." *Id.* at 690-91.

### 2. Applying the Common Sense Approach to Grob's Case

Grob's prior act of criminal mischief is similar to disorderly conduct for purposes of U.S.S.G. § 4A1.2, even though, as in *Reyes-Maya*, 305 F.3d at 367, the statutory punishments for the crimes differ slightly. Under Montana law

> (1) A person commits the offense of criminal mischief if the person knowingly or purposely:
>
>> (a) injures, damages, or destroys any property of another or public property without consent; [or]
>>
>> (b) without consent tampers with property of another or public property so as to endanger or interfere with persons or property or its use;
>
> * * *
>
> (2) A person convicted of criminal mischief must be ordered to make restitution in an amount and manner to be set by the court.
>
> * * *

(3) A person convicted of the offense of criminal mischief shall be fined not to exceed $1,500 or be imprisoned in the county jail for any term not to exceed 6 months, or both. If the offender commits the offense of criminal mischief and causes pecuniary loss in excess of $1,500, injures or kills a commonly domesticated hoofed animal, or causes a substantial interruption or impairment of public communication, transportation, supply of water, gas, or power, or other public services, the offender shall be fined an amount not to exceed $50,000 or be imprisoned in the state prison for a term not to exceed 10 years, or both.

Mont. Code Ann. § 45-6-101(1)-(3).

**[4]** There is no federal definition of the crime of disorderly conduct, the closest offense to criminal mischief enumerated in U.S.S.G. § 4A1.2(c). Therefore, "we may look to either state law or the Model Penal Code" for a definition of the crime. *Lopez-Pastrana*, 244 F.3d at 1028 n.4 (citing *Kemp*, 938 F.2d at 1023-24 (examining disorderly conduct under Arizona law); and *Martinez*, 69 F.3d at 1001 (examining loitering under the Model Penal Code)). Under Montana law

(1) A person commits the offense of disorderly conduct if the person knowingly disturbs the peace by:

(a) quarreling, challenging to fight, or fighting;

(b) making loud or unusual noises;

(c) using threatening, profane, or abusive language;

* * *

(i) creating a hazardous or physically offensive condition by any act that serves no legitimate purpose; or

(j) transmitting a false report or warning of an impending explosion in a place where its occurrence would endanger human life.

(2) Except as provided in subsection (3), a person convicted of the offense of disorderly conduct shall be fined not to exceed $100 or be imprisoned in the county jail for a term not to exceed 10 days, or both.

(3) A person convicted of a violation of subsection (1)(j) shall be fined not to exceed $1,000 or be imprisoned in the county jail for a term not to exceed 1 year, or both.

Mont. Code Ann. § 45-8-101.[2]

**[5]** In Montana, the statutory punishment for committing criminal mischief can be, but need not be, more serious than the statutory punishment for disorderly conduct. In the ordinary case, a defendant convicted of disorderly conduct can be fined up to $100, imprisoned in the county jail for up to ten days, or both. Mont. Code Ann. § 45-8-101(2). In the most extreme case, if the conviction is for transmitting a false warning regarding the imminence of an explosion, a defendant can be fined up to $1,000, imprisoned for up to one year, or both. *Id.* § 45-8-101(3). In contrast, in the ordinary case, a defendant convicted of criminal mischief can be fined up to $1,500, imprisoned for up to six months, or both. *Id.* § 45-6-101(3). The statutory punishment rises to a fine of up to $50,000 and imprisonment of up to ten years if the defendant also causes more than $1,500 worth of damages, "injures or

---

[2]The Model Penal Code and Montana definitions of disorderly conduct are substantially similar. *See* Model Penal Code § 250.2.

kills a commonly domesticated hoofed animal, or causes a substantial interruption" of various public services. *Id.*

**[6]** Nonetheless, we agree with the Fifth Circuit's observation that "[m]ore important than the statutory range of punishments is the actual punishment given, as '[t]he level of punishment imposed for a particular offense serves as a reasonable proxy for the perceived severity of the crime.'" *Reyes-Maya*, 305 F.3d at 367 (quoting *Hardeman*, 933 F.2d at 282); *see also Booker*, 71 F.3d at 689 (citing *Kemp*, 938 F.2d at 1023). Following Grob's prior conviction, the Flathead County Justice Court imposed a $130 fine and ordered Grob to pay an $80 court fee and $750 in restitution.³ Grob's *actual* punishment for committing criminal mischief was thus very similar to the $100 fine that can be imposed on those convicted of disorderly conduct.

**[7]** By imposing such a light sentence, moreover, the Montana court deemed Grob's crime fairly minor—an important consideration in applying the second factor in Application Note 12, the perceived seriousness of the offense as indicated by the level of punishment. *See Reyes-Maya*, 305 F.3d at 367; *Booker*, 71 F.3d at 689 & n.7; *see also United States v. Mejia*, 559 F.3d 1113, 1115-16 (9th Cir. 2009) (finding that a suspended prison sentence and two years probation "indicates that the offense of which he was convicted was not regarded as serious"). Such a minor punishment "militates strongly in favor of treating the crime for purposes of [§ 4A1.2(c)] as akin to a relatively minor breach of the peace." *Booker*, 71 F.3d at 689-90.

**[8]** Next we consider the elements of the two offenses. As in *Reyes-Maya*, 305 F.3d at 367, "a comparison of the ele-

---

³The restitution award is not relevant to our comparison of punishments, as in Montana a defendant convicted of disorderly conduct can also be ordered to pay appropriate restitution. *See* Mont. Code Ann. § 46-18-241 (2009).

ments of the prior offense with the elements of the exempted offense . . . shows both similarity and difference." Criminal mischief under Montana law involves the knowing or purposeful injuring or destruction of property. Mont. Code Ann. § 45-6-101(1). Disorderly conduct involves the knowing disturbance of the peace in various ways, including by quarreling, fighting, making "loud or unusual noises," using threatening, profane, or abusive language, or "creating a hazardous or physically offensive condition by any act that serves no legitimate purpose." *Id.* § 45-8-101(1).

**[9]** That criminal mischief and disorderly conduct have some distinct elements, however, is not dispositive of the question of whether the offenses are similar for the purposes of U.S.S.G. § 4A1.2. *See Hardeman*, 933 F.2d at 281. Indeed, in promulgating Application Note 12, the Sentencing Commission explicitly rejected the strict "elements" test under which courts determine similarity by comparing only the elements of two separate offenses. *See* U.S. Sentencing Guidelines Manual supp. to app. C at 240 (2009). Especially where both offenses are "crimes of generic definition that proscribe a great variety of activity," *see Booker*, 71 F.3d at 689, we instead focus "on the actual offense conduct," *see id.* (citing *Kemp*, 938 F.2d at 1023), and on whether the enumerated offense covers the prior conduct. Grob's vandalism in 2000 could have been described (and prosecuted) as "disturbing the peace" by "creating a hazardous or physically offensive condition by any act that serves no legitimate purpose." *See* Mont. Code Ann. § 45-8-101(1)(i). Put another way, the Montana criminal mischief and disorderly conduct statutes can reach similar conduct, and in this case seem to do so. *Cf. Montana v. Vukasin*, 75 P.3d 1284 (Mont. 2003) (addressing an appeal by a defendant convicted of both criminal mischief and disorderly conduct after "breaking things and yelling" in his apartment following a fight with his girlfriend).

**[10]** In considering the fourth factor in Application Note 12, we conclude that Grob's prior conviction for criminal mis-

chief does not evidence a level of culpability suggesting dissimilarity with the minor offenses which are enumerated under U.S.S.G. § 4A1.2. While, as the government argues, the fact that Grob's prior offense was motivated by a desire for revenge against his landlord may indicate a heightened level of culpability, we must examine "the entire episode which led to the prior conviction." *Reyes-Maya*, 305 F.3d at 367 (citing *United States v. Moore*, 997 F.2d 30, 34 (5th Cir. 1993)). We note that Grob committed this offense at the age of nineteen, and that it was his first conviction as an adult. Grob, moreover, fully cooperated with law enforcement by agreeing to answer questions and by confessing to the crime. *Cf. id.* at 367-68. (holding that failure to cooperate with the police was "suggestive of both a greater degree of culpability and increased likelihood of future criminal conduct"). Most importantly, the Flathead County Justice Court, having had the opportunity to observe Grob and review the factual basis of the underlying offense, imposed a light punishment by ordering Grob to pay a $130 fine and restitution to his landlord. This "extremely light sentence . . . suggests a low level of culpability and low predictive capacity for future criminality." *See id.* at 367; *see also Booker*, 71 F.3d at 690; *Hardeman*, 933 F.2d at 283.

**[11]** Finally, we conclude that Grob's prior conviction for criminal mischief, in isolation, does not evidence a strong likelihood of recurring criminal conduct. The government, assessing the situation with the benefit of hindsight, suggests that Grob's attempt to take revenge against his ex-girlfriend indicates that the prior acts of criminal mischief—in which he took revenge against his landlord—demonstrated a serious risk of recurring revenge-based criminal conduct. Like the Seventh Circuit, however, "[w]e do not believe such a methodology is compatible with the approach mandated by § 4A1.2(c)(1)." *Booker*, 71 F.3d at 690. Application Note 12 makes it clear that, rather than employing hindsight in light of the instant offense, when determining whether a prior offense demonstrated a risk of recurring criminal conduct, courts

should look only to the circumstances present at the time of that prior offense. *See id.* Although it is true that Grob ultimately sent threatening messages to his ex-girlfriend indicating that he was seeking vengeance, the fact that at the age of nineteen he sought to "get back" at his landlord by vandalizing a rented house simply does not demonstrate that he was likely to engage in future revenge-based criminal conduct.

**[12]** To summarize: the punishment Grob received for his prior act of criminal mischief and the punishment he could have received for disorderly conduct are quite similar, as are his actual conduct in vandalizing the house in 2000 and the conduct covered by disorderly conduct. The minimal punishment Grob received for his act of criminal mischief, moreover, demonstrates that Grob's prior act was of similar perceived seriousness to disorderly conduct, and that his earlier vandalism did not indicate a likelihood of recurring criminal conduct. We therefore conclude that, under these circumstances, criminal mischief under Montana law is "similar to" the enumerated offense of disorderly conduct within the meaning of U.S.S.G. § 4A1.2(c).

## B.  Similarity of the Prior Offense to the Instant Offense

**[13]** Even though Grob's prior act of criminal mischief is "similar to" disorderly conduct, Grob's sentence for criminal mischief should still be counted if: (A) the sentence was for a term of probation of more than one year or a term of imprisonment of at least thirty days; or (B) the prior offense of criminal mischief is similar to the instant offense. *See* U.S.S.G. § 4A1.2(c). Grob's sentence (a $130 fine, an $80 court fee, and $750 in restitution) was not for a term of probation of more than one year or a term of imprisonment of at least thirty days. We must therefore determine whether Grob's prior offense of criminal mischief is similar to the instant offense of cyberstalking. We are again guided by the "common sense" approach in Application Note 12. *See United States v. King,*

506 F.3d 532, 536 (7th Cir. 2007) (using the five-part common sense approach in comparing the prior unlisted offense to the instant offense).

[14] Applying this approach, it is immediately clear that Grob's prior act of criminal mischief is in no way "similar to" the instant offense of cyberstalking. One goal of this inquiry is to determine whether one offense is "categorically more serious" than the other. *See Booker*, 71 F.3d at 689 (quoting *United States v. Caputo*, 978 F.2d 972, 977 (7th Cir. 1992)). In almost every possible way, cyberstalking under 18 U.S.C. § 2261A(2)(B) is more serious than was Grob's prior act of criminal mischief. An individual commits cyberstalking when, with the intent to kill, injure, or harass, he or she "uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to [another] person or places that person in reasonable fear of the death of, or serious bodily injury to" that person, that person's immediate family, or that person's spouse or intimate partner. 18 U.S.C. § 2261A(2)(A)-(B). Any person who commits this crime can be fined and imprisoned in a federal penitentiary for, at the least, up to five years; if the stalking results in the death of the victim, the perpetrator can be imprisoned for life. *Id.* § 2261(b). This statutory punishment is far more serious than that provided for criminal mischief in Montana, which in minor cases permits imprisonment in a county jail (rather than state prison) for at most six months. *See* Mont. Code Ann. § 45-6-101(2)-(3). More importantly, the *actual* punishments imposed for these two offenses differed dramatically: after his conviction for criminal mischief, Grob was ordered to pay a fine of $130 and to make restitution; after pleading guilty to one count of cyberstalking, Grob was sentenced to serve over three years in federal prison, a sentence that would have been within the applicable guideline range even without including Grob's prior criminal mischief conviction in the criminal history calculation. These different levels of imposed punishment "serve[ ] as a reasonable proxy for the perceived

severity of the crime[s]." *Reyes-Maya*, 305 F.3d at 367 (quoting *Hardeman*, 933 F.2d at 282); *see also Booker*, 71 F.3d at 689.

Applying the remaining factors, we reach the same conclusion. Not only are the statutory elements of these offenses so different that it is difficult to imagine conduct that could be reached by both statutes, but Grob's actual conduct in vandalizing the house in 2000 in no way comes within the conduct prohibited by 18 U.S.C. § 2261A(2)(A)-(B). Moreover, Grob's conduct in sending volleys of explicit, violent, and threatening messages to his ex-girlfriend evidences a high level of culpability and concomitant likelihood of recurring criminal conduct.

**[15]** Accordingly, we conclude that Grob's prior offense of criminal mischief was not "similar to" the instant offense of cyberstalking within the meaning of U.S.S.G. § 4A1.2.

## III.   CONCLUSION

The district court committed procedural error by counting Grob's prior offense of criminal mischief in Montana in determining Grob's criminal history category. This error placed Grob in Criminal History Category III rather than in Criminal History Category II, which increased the Guidelines sentencing range. In calculating the Guidelines range, the district court committed a significant procedural error which in this case requires us to remand for resentencing. We therefore vacate Grob's sentence and remand for resentencing.

**VACATED and REMANDED.**