W. FLETCHER, Circuit Judge,
dissenting:
Defendant Landa appeals a five-year mandatory minimum sentence imposed following his guilty plea to violations of the federal Controlled Substances Act. He argues that the district court should not have assigned a criminal history point for his earlier conviction of an infraction under California law for driving a vehicle while under the age of 21 and having a blood alcohol level of 0.05% or more. If that criminal history point had not been assigned, the district court would not have been required to impose the mandatory minimum sentence. The majority concludes that the district court was correct in assigning the additional point. I disagree and respectfully dissent.
I. Discussion
Chapter Four of the Sentencing Guidelines Manual sets forth a detailed scheme for determining a defendant’s criminal history category. Points are assigned for sentences imposed for prior convictions, sentences of probation, and certain other factors. See U.S.S.G. § 4A1.1. Some prior convictions, either because they are too minor or too remote in time, or because of some other reason, are not counted.
The district court assigned Landa one criminal history point for his prior conviction for violating California Vehicle Code § 23140(a). It did so under U.S.S.G. § 4Al.l(c), which provides for the addition of one point for each “prior sentence” of probation. See U.S.S.G. § 4A1.1 cmt. background. Under U.S.S.G. § 4A1.2(c)(1) and (2), however, sentences for certain minor offenses are not counted.
A. Section 4A1.2(c)(l)
Section 4A1.2(c)(l) of the Guidelines lists a series of misdemeanor and petty offenses. Those listed offenses and “offenses similar to them” are generally not counted, but they are counted when a term of probation of more than a year or a term of imprisonment of at least thirty days was imposed, or when the prior offense was similar to the “instant offense.” The listed misdemeanor offenses include several driving-related offenses: “Careless or reckless driving,” “Driving without a license or with a revoked or suspended license,” and “Leaving the scene of an accident.”
*843 The government argues that Landa’s violation of § 23140(a) is sufficiently similar to the listed offenses in § 4A1.2(c)(l) that he should receive a point. Landa was sentenced to 18 months’ probation, which he could have terminated at any time by paying $655. He paid the full amount, but not until he had already been on probation for more than a year. Because Landa’s actual term of probation (rather than the term of probation he could have served if he had paid the $655 earlier) was more than a year, I am willing to assume that his sentence of probation was over a year for purposes of § 4A1.2(c)(l). However, his violation of § 23140(a) was not sufficiently similar to any of the listed offenses to come within the guideline. A conviction under § 23140(a) requires only proof of a blood alcohol content over .05% and an age under 21. Careless or reckless driving is not established by such a conviction beyond what may be inferred from blood alcohol content and age. The offenses of driving without a license or a revoked or suspended license and leaving the scene of an accident have no similarity to a violation of § 23140(a).
B. Section 4A1.2(c)(2)
Section 4A1.2(c)(2) of the Guidelines presents a closer case. That section provides that “[sjentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted,” regardless of the sentence or term of probation imposed. Id. (emphasis added). The list of never-counted offenses in § 4A1.2(c)(2) includes “juvenile status offenses and truancy,” “minor traffic infractions,” and offenses “similar to” them. Because of the “similar to” clause, an offense need not appear on the list by name in order for it to be excluded. Id. I address in turn “juvenile status offenses” and offenses “similar” to them.
1. Juvenile Status Offenses
The Guidelines do not define “juvenile status offenses,” and we have not previously adopted a definition of the term. Other circuits have grappled with questions concerning the term’s meaning, including the question we face here — whether the term applies to a conviction for a crime that includes as an element the defendant’s youth, but was committed when the defendant was 18 or older. The majority has adopted the First Circuit’s definition of “juvenile status offenses” articulated in United States v. Correa, 114 F.3d 314, 318-19 (1st Cir.1997). I agree with the majority that this is the appropriate definition. I agree, further, that Landa’s conviction under § 23140(a) was not a conviction for a “juvenile status offense” under this definition.
2. “Similar To”
The critical question is whether Landa’s offense was “similar to” a juvenile status offense. In the years after the adoption of the Guidelines, the courts of appeals developed different approaches for determining the meaning of “similar to” in § 4A1.2(c). See United States v. Grob, 625 F.3d 1209, 1213-14 (9th Cir.2010) (discussing approaches used in different circuits). In 2007, the Sentencing Commission promulgated a test in an Application Note to § 4A1.2 for determining similarity:
In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree *844 to which the commission of the offense indicates a likelihood of recurring criminal conduct.
U.S.S.G. Supp. to app. C amend. 709 (codified at § 4A1.2 cmt. n.12). We have held that the “common sense approach” in Application Note 12 is now the governing test for similarity. Grob, 625 F.3d at 1213-14; see also United States v. Lichtenberg, 631 F.3d 1021 (9th Cir.2011). Our common sense evaluation is guided by the factors enumerated in the Application Note. Grob, 625 F.3d at 1215-19.
The first factor in determining similarity under the Application Note to § 4A1.2 is a “comparison of punishments imposed for the listed and unlisted offenses.” For purposes of comparing a listed offense and a potentially similar unlisted offense, we look first to any federal definition of the listed offense. Grob, 625 F.3d at 1215. If there is no federal definition, we look to either the Model Penal Code or state definition. Id. However, none of those sources contains a single definition of “juvenile status offense.” California law does, however, specify certain prototypical juvenile status offenses, including underage possession of tobacco and truancy by minors. Cf. United States v. Ward, 71 F.3d 262, 263 (7th Cir.1995) (purchase of cigarettes is prototypical juvenile status offense); United States v. Miller, 987 F.2d 1462, 1465-66 (10th Cir.1993) (truancy and loitering are juvenile status offenses). Given that we are asked to determine the similarity of a California offense to juvenile status offenses, we should primarily rest our analysis on a comparison of Landa’s offense to these California offenses. Following our recent decision in Grob, we should focus on the punishment actually imposed for the unlisted offense, rather than the maximum possible punishment, because “the level of punishment imposed for a particular offense serves as a reasonable proxy for the perceived severity of the crime.” 625 F.3d at 1216 (internal quotation marks and alteration omitted). The defendant in Grob had been convicted of an act of criminal mischief, which ordinarily carried potential penalties of $1,500 and six months’ imprisonment. The question was whether criminal mischief was similar to the offense of disorderly conduct, which ordinarily carried a possible sentence of $100 and ten days imprisonment under state law. Because Grob himself had actually been fined only $130 for his act of criminal mischief, the court held that the two offenses were similar, despite the large difference in the available maximum sentences. Id. at 1216.
The maximum penalty for a violation of California Vehicle Code § 23140(a) is a fine ($100 for a first offense, $200 for a second offense, and $300 thereafter), loss of the offender’s driver’s license for one year, and the requirement that the offender attend a driving-under-the-influence program. Cal. Veh.Code §§ 13202.5, 23140, 23502, 42001.25. A violation of § 23140(a) is not punishable by imprisonment. Cal.Penal Code § 19.6. The penalty actually imposed on Landa was 18 months’ probation, to terminate immediately upon the payment of $665. Because Landa was a first-time offender, his fine should have been $100. The record does not give any indication how the court arrived at $665. I assume that $555 of that amount was attributable to court fees. The record does not reflect whether Landa’s license was suspended or whether he was ordered to attend a remedial program, but since those penalties are automatic it is likely that they were imposed. Cal. Veh.Code §§ 13202.5, 23502(a).
By comparison, the penalty for underage tobacco possession is a $75 fine or 30 hours of community service. CaLPenal Code § 308(b). The maximum penalties for truancy, after repeated violations, are a $100 *845 fine, suspension of the student’s driver’s license, compulsory attendance at a truancy prevention program, 20-40 hours of community service, or adjudication as a ward of the court. Cal. Educ.Code § 48264.5.
The penalties imposed on Landa suggest that the California court regarded his offense of violating § 23140(a) as similar to true juvenile status offenses under California law. The fine is in the same range as the fines for those offenses. Driver’s license suspension and attendance in a corrective program is a part of the punishment for one of those offenses. The punishment actually imposed on Landa thus falls into the normal range for juvenile status offenses.[1] I note, by comparison, that the penalty for a single violation of California Vehicle Code § 23152, which criminalizes driving by an adult with a blood alcohol content greater than .08%, is jail time of at least 96 hours and up to 6 months, attendance at a corrective program, a 6-month driver’s license suspension, a fine of up to $1000 (plus court fees), and probation up to 5 years. Cal. Veh.Code §§ 23536, 23600, 13352(a)(1). Repeated offenses under California Vehicle Code § 23152 are punished by up to three years in prison, a $5,000 fine, and a five-year driver’s license suspension. Cal. Veh.Code §§ 23566, 13352(a)(6). Landa’s punishment is well below that range.
The second factor is the seriousness of the offense. The relatively light sentence imposed — probation that could be terminated upon payment of a small fine made larger by court fees — indicates that Landa’s violation was not regarded by the California sentencing court as a serious offense. See Grob, 625 F.3d at 1216 (“By imposing such a light sentence, moreover, the Montana court deemed Grob’s crime fairly minor.”). I emphasize that driving under the influence of alcohol is not a trivial matter. But Application Note 12 directs us to consider the seriousness of the particular offense as indicated by the punishment chosen by the court, not by an assessment of the dangerousness or gravity of the behavior divorced from the defendant who was before the sentencing court.
The third factor is the elements of the offense. There is no generic “juvenile status offense” that is defined by a single list of elements. However, all juvenile status offenses share one defining element: they criminalize behavior that would not be criminal if the offender were older. As we have just held, true juvenile status offenses are those that are committed by persons under 18. Driving with blood alcohol content greater than .05% but less than .08% is criminal only for drivers under 21. Driving with blood alcohol content over .08%, on the other hand, is criminal regardless of the offender’s age.
In criminalizing driving with a blood alcohol content over .05% and choosing a cutoff age of 21, the legislature criminalized a risky activity because it judged that people under that age were less mature, and less able to handle alcohol, than those over the age of 21. So while Landa’s offense is not a juvenile status offense because he was over 18, its elements are conceptually similar to those of a juvenile status offense. Its similarity is highlighted by the fact that § 23140(a) is contained *846 in an article entitled “Juvenile offenses involving alcohol.”
The majority assumes that it has been established, for purposes of sentencing, that Landa’s blood alcohol content was in excess of .08%. It writes, “We think it telling that Landa’s conduct would have been illegal regardless of his age.” Maj. op. at 841. The police reported that Landa’s Breathalyzer measurements were .086% and .087%, but Landa never admitted that those measurements were correct. Landa pled guilty only to driving with a blood alcohol content in excess of .05%. It is established law that for purposes of sentencing, when applying the modified categorical test, we cannot consider information that merely appears in a police report as having been established as true. Shepard v. United States, 544 U.S. 13, 22-26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005).
The fourth factor is the offender’s culpability. The fact that § 23140(a) is an infraction, the least serious type of criminal offense, indicates that the legislature viewed the culpability of someone violating this provision as relatively minor. Drinking and driving may nonetheless be properly regarded as a more culpable activity than other juvenile status offenses. In most of those offenses, the offender puts only himself at risk. But a young and inexperienced driver who is intoxicated, even though to, a lesser degree than would violate the law for an adult, puts others at risk. See People v. Goslar, 70 Cal.App.4th 270, 278, 82 Cal.Rptr.2d 558 (1999) (noting that the California legislature has recognized that “younger drivers, less experienced in driving and in the use of alcoholic beverages, were more likely to be involved in accidents at lower blood-alcohol levels than older drivers”).
The fifth factor is “the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.” The Grob court explained that this inquiry is forward-looking. “[Rjather than employing hindsight in light of the instant offense, when determining whether a prior offense demonstrated a risk of recurring criminal conduct, courts should look only to the circumstances present at the time of that prior offense.” 625 F.3d at 1217. There is no evidence that a violation of § 23140(a) is anything more than weakly predictive of Landa’s later offenses.
In my view, the five factors slightly favor Landa. The comparison of punishments, the seriousness of the offense, and the elements of the offense favor Landa. The level of culpability disfavors him. The predictiveness of the offense is unclear. As a matter of common sense — the ultimate touchstone of the inquiry — I am persuaded that Landa’s offense in violation of § 23140(a) is “similar to” a juvenile status offense. Section 23140(a) criminalizes behavior that would be legal if engaged in by a person above 21, and Landa pled guilty only to a violation of that section. He did not plead guilty to an offense of driving with a blood alcohol level that would be illegal for someone over 21. The only difference between Landa’s offense and true juvenile status offense is that the age threshold is 21 rather than 18. In my view, those three years do not make § 23140(a) substantially different from other juvenile status offenses. Indeed, if offenses with an age cutoff of 21 rather than 18 are not similar to juvenile status offenses, the “similar to” category for juvenile status offenses may turn out to be a null set.
My holding would be consistent with, though not compelled by, the limited case-law of our sister circuits. In United States v. Cole, 418 F.3d 592, 598-600 (6th Cir.2005), the Sixth Circuit reasoned that a 19-year-old’s conviction for possessing alcohol, when the legal drinking age was 21, *847 was similar to a “juvenile status offense” and therefore could not be counted as a criminal history point. In United States v. Whitney, 229 F.3d 1296, 1309-10 (10th Cir.2000) the Tenth Circuit hypothesized that a similar conviction could meet the definition of “juvenile status offense” and concluded that the state of the law was “unsettled,” although it declined to reverse a district court’s contrary conclusion on plain error review.
The Eighth Circuit has left open the possibility that offenses committed by those over 18 may be “similar to” juvenile status offenses. In Webb, 218 F.3d 877, 880 (8th Cir.2000), that court held that the conviction of a 19-year-old for underage possession of alcohol was not a “juvenile status offense,” but it did not consider whether it was similar to a juvenile status offense, apparently because the defendant had not made that argument. In the later case United States v. Johnston, 533 F.3d 972, 977-78 (8th Cir.2008), the Eighth Circuit noted that Webb had not decided the “similar to” question and quoted the Sixth Circuit’s analysis in Cole, but declined to reach the question because any error would have been harmless.
C. DUI Offenses
Application Note 5 in the Commentary to the Guidelines provides that ordinary drinking and driving convictions are counted:
Sentences for Driving While Intoxicated or Under the Influence. — Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c).
U.S.S.G. § 4A1.2 cmt. n.5. The government argues under Note 5 that Landa’s violation of § 23140(a) must be counted because it is a driving-under-the-influence (“DUI”) offense, within the meaning of the Note. The majority suggests its agreement with the government’s argument. See Maj. op. at 835.
The government’s argument proves too much. It is uncontested that if a violation of § 23140(a) is committed by someone under 18, the violation is a true juvenile status offense. If such a violation of § 23140(a) were a DUI under Application Note 5, there would be a conflict between the Guidelines and the Commentary because juvenile status offenses are explicitly excluded by the text of § 4A1.2(c)(2) while DUI offenses are counted under Note 5. When the text of the Guidelines and a portion of the Commentary conflict, the text controls. Stinson v. United States, 508 U.S. 36, 45, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Therefore, the textual command that juvenile status offenses “are never counted” trumps any potentially conflicting provision in the Commentary.
Excluding such a violation of § 23140(a) from the scope of Note 5 is also a logical reading of the commentary. Note 5 makes clear that DUIs are not “minor traffic infractions” and for that reason should be counted. By contrast, the rationale for not counting juvenile status offenses is that they are minor infractions. If the drafters had intended to include underage drinking-and-driving within its definition of DUI, they would likely have given us additional language explicitly so providing.
I do not conclude that DUIs based on a blood alcohol content of .08% or over— which are violations of California Vehicle Code § 23152 rather than § 23140(a) — are excluded if committed by a juvenile. A violation of § 23152 is not a juvenile status offense. Rather, it is adult felony, even if committed by someone under 18, because *848 it depends entirely on blood alcohol content; the age of the offender is irrelevant.
A true juvenile status offense — a violation of § 23140(a) committed by someone under 18 — is excluded from the scope of § 4A1.2(c)(2). The Guideline text does not distinguish between true juvenile status offenses and “similar to” offenses. The text states only that “prior offenses and offenses similar to them ... are never counted.” That is, § 4A1.2(c)(2) prescribes the same treatment for juvenile status and for offenses “similar to” them. Since the true juvenile status offense is always excluded from criminal history category computation, “similar to” offenses must be excluded as well.
D. Harmless Error
We reverse and remand for resentencing on the basis of an error in calculating the Guidelines only when the error affected the sentence imposed. See United States v. Cruz-Gramajo, 570 F.3d 1162, 1167 (9th Cir.2009). The government argues that even if Landa’s violation of § 23140(a) is not countable as a criminal history point, the error is harmless because Landa is in any event ineligible for the safety valve because he has not debriefed the government. I disagree that the error was harmless.
A defendant bears the burden of proving that he is eligible for safety valve relief. United States v. Diaz-Cardenas, 351 F.3d 404, 409 (9th Cir.2003). The fifth requirement for safety valve relief provides that the defendant may be eligible for relief if
not later than the time of the sentencing hearing the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.
18 U.S.C. § 3553(f)(5).
We have interpreted this provision several times. As we have explained, the purpose of the safety valve statute is not, like 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 (the cooperation provisions), to “provid[e] the government a means to reward a defendant for supplying useful information,” nor, like U.S.S.G. § 3E1.1 (the acceptance of responsibility provisions), to “spar[e] the government the trouble of preparing for and proceeding with trial.” United States v. Shrestha, 86 F.3d 935, 940 (9th Cir.1996). Rather, its purpose is to enable a sentencing court to go below a statutory minimum in sentencing a defendant who played a minor role and who “made a good-faith effort to cooperate with the government.” Id.
We expounded on the meaning of “good-faith effort to cooperate” in United States v. Mejia-Pimental. In that case, the defendant was sentenced to 210 months, but his sentence was reversed on direct appeal because of the district court’s failure to resolve significant objections to the PreSentence Report. The district court imposed the same sentence on remand, and the court of appeals again reversed and remanded for resentencing in light of Booker and Ameline. United States v. Mejia-Pimental, 477 F.3d 1100 (9th Cir. 2007). Before his third sentencing hearing, and after all the relevant information had already been revealed, the defendant sought for the first time to provide a safety valve proffer. The government refused the proffer. Mejia-Pimental wrote a letter to the government anyway, detailing *849 his involvement and his knowledge of others’ involvement.
We reversed the district court’s finding in Mejia-Pimental that the defendant had not satisfied the debriefing requirement. We held that “to demonstrate ‘good faith,’ a defendant need only show that by the time of sentencing he has ‘truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses.’ ” Id. at 1102 (quoting 18 U.S.C. § 3553(f)(5)). As long as the “ultimate proffer is truthful and complete,” the defendant “has satisfied the fifth safety valve criterion, regardless of his timing or motivations.” Id. at 1106. We explained that the district court may consider tardiness or reluctance in cooperation in tailoring an individual’s sentence under 18 U.S.C. § 3553(a), but that “early and consistent cooperation is ‘not a precondition for safety valve relief.’ ” Id. at 1108 (quoting United States v. Tournier, 171 F.3d 645, 647 (8th Cir.1999)).
Mejia-Pimental makes clear that the requirement that the defendant provide information “not later than the time of the sentencing hearing” does not refer only to the initial sentencing in a case where multiple sentencings take place. Mejia-Pi-mental initially declined to debrief and instead appealed his sentence on other grounds. When the court of appeals reversed and remanded for resentencing on other grounds, Mejia-Pimental obtained another opportunity to debrief prior to his resentencing. Landa should be entitled to the same opportunity.
Conclusion
Because Landa’s offense under California Vehicle Code § 23140(a) is “similar to” a “juvenile status offense,” it should not have been counted as a criminal history point. I would remand the case so that Landa may, if he chooses, debrief the government. At that point, the district court would be able to determine his eligibility for safety valve relief.
I respectfully dissent.

. I do not compare Landa's offense with underage possession or purchase of alcohol because the age cutoff for that offense is 21 rather than 18. I note, however, that the penalty for those offenses is $250 or 24-32 hours of community service "at an alcohol or drug treatment program” (for a second or subsequent offense, $500 or 36-48 hours of community service), in addition to a mandatory one-year driver's license suspension. Cal. Bus. & Prof.Code § 25662.