[No. D028216. Fourth Dist., Div. One. Feb. 24, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL JASON GOSLAR, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion parts B, C and D.

272

**COUNSEL**

R. Charles Johnson, under appointment by the County of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General,

William M. Wood and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENKE, J.**—Daniel Jason Goslar pleaded guilty to driving without a license. He was convicted of two counts of gross vehicular manslaughter while intoxicated, with true findings on allegations of injury to multiple victims within the meaning of Vehicle Code section 23153, subdivision (a), and one count of causing injury while driving under the influence of alcohol, with true findings on the same allegations of injury to multiple victims and the infliction of great bodily injury within the meaning of Penal Code section 12202.7, subdivision (a). Goslar was found not guilty of causing injury while driving with a blood-alcohol level of 0.08 or greater.

Goslar was sentenced to a prison term of seven years. He appeals, arguing that Vehicle Code section 23140, making it a unlawful for a person under 21 years of age to drive with a blood-alcohol level of 0.05 or more, denies equal protection and is void for vagueness. He also argues various instructional errors. We reject his arguments and affirm the judgment.

## FACTS

### A. Prosecution Case

In March 1996, appellant, who was then 19 years of age, and his friend Jorge Gallegos were Marines stationed in Twentynine Palms. On the morning of March 17, 1997, they drove to Tijuana, Mexico, in Gallegos's automobile. The men parked at the border, walked into Mexico, went to nightclubs and drank beer. Several hours later they returned to the car. Gallegos, who drank more beer than appellant, felt too drunk to drive. Appellant stated he was not drunk and would drive. It was agreed the men would stop at the first motel they saw in San Diego. Gallegos got into the car and fell asleep almost immediately. Appellant drove but did not stop in San Diego.

About 6:00 a.m. on March 17, 1996, Oscar Navarro, his 15-year-old daughter Lourdes, his 11-year-old daughter Marissa and his 10-year-old son Marco were driving north on Interstate 5 through Oceanside on their way to Magic Mountain. The Navarros' car broke down and stopped in the center divider of the freeway. Oscar turned on his emergency flashers and told the children to stay in the car while help came.

Between 6:00 and 7:00 a.m., Jeffrey Risley was driving north at 70 miles per hour in the fast lane of Interstate 5 through Carlsbad. He noticed a car in his lane approaching quickly from behind and moved over. The car, driven by appellant, passed him going at what Risley estimated was 90 miles per hour. Risley noticed appellant weave first over the "Botts' dots" dividing the fast lane from the lane to the right and then over the dots marking the center divider. Appellant went over a hill and Risley lost sight of him. Risley believed appellant was either intoxicated or fatigued.

Moments later, appellant came up behind a car driven by Michael Cartright. Cartright was startled by appellant's speed, which he estimated at between 100 and 120 miles per hour. Appellant's car started to move to the right and in response, Cartright, concerned at the rate of closure, began moving to the left to avoid him. Appellant then moved to the left, Cartright moved to right and appellant went by him. As he did so, Cartright could hear the engine of appellant's car turning at very high revolutions. Cartright then saw appellant crash into the rear of the Navarros' vehicle. The Navarros' car burst into flames. Lourdes and Marissa died from severe head and neck injuries, Marco and Oscar were badly injured.

Appellant, who was slightly injured in the crash, admitted to a highway patrol officer that he was the driver of the car involved in the collision and that he had no driver's license. The same officer contacted appellant later in the morning at the hospital. Appellant stated he had been "partying" in Tijuana all night and was on his way to Santa Ana. The last thing he remembered before the crash was driving 70 miles per hour in the number 2 lane and falling asleep.

The officer smelled a strong odor of alcohol on appellant. Appellant's eyes were red and watery and his speech thick. The officer concluded appellant was under the influence and placed him under arrest.

After waiving his *Miranda* rights (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974]), appellant told the officer he last slept the night before and had three or four hours of sleep at that time. Appellant stated he drank three beers in Tijuana between 1:00 and 5:00 a.m., that he last ate at 7:00 p.m. the day before and that he was not feeling any effects from the alcohol.

It was the officer's opinion the collision was caused by appellant driving under the influence, over the speed limit and making an unsafe turning movement.

Two tests performed on a blood sample taken from appellant at 9:28 a.m. on March 17 rendered blood-alcohol levels of 0.047 and 0.048.

An expert testified the ability to drive is significantly impaired with a 0.05 blood-alcohol level. The expert stated an inexperienced driver's ability to drive would be affected sooner by the intake of alcohol. Based on appellant's blood-alcohol levels at 9:28 a.m., the expert estimated that at the time of the accident appellant's blood-alcohol level was between 0.085 and 0.099 and that he was under the influence of alcohol at that time. The expert further opined that even if appellant's blood-alcohol level at the time of the crash had been 0.047, he would have been under the influence.

B.  *Defense Case*

Appellant testified and stated he had four beers while in Tijuana and that he was not feeling the effects of the beers when he was driving. Appellant stated he was not a licensed driver, had little experience driving and had never driven on a freeway before. At one point while driving that evening, appellant dozed off and drove over the dots dividing lanes. Appellant stated his last recollection before the accident was driving at 70 miles per hour in Carlsbad.

A forensic toxicologist testified appellant's blood-alcohol level at the time of the accident was 0.04 to 0.05. The expert opined that appellant was not impaired by alcohol at the time of the collision.

An accident investigator concluded appellant's vehicle was traveling at "freeway speeds" but not over 100 miles per hour when the accident occurred.

DISCUSSION

A.  *Equal Protection and Vagueness Claims*

Appellant argues his two convictions for Penal Code section 191.5, subdivision (a), gross vehicular manslaughter while intoxicated, based on a violation of Vehicle Code section 23140, must be reversed because the section denies him equal protection and is void for vagueness.

In pertinent part, Penal Code section 191.5, subdivision (a), states: "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being . . . , in the driving of a vehicle, where the driving was in violation of [Vehicle Code] Section 23140 [person under 21 years of age driving with blood-alcohol concentration of 0.05 or more], 23152 [subdivision (a), driving under the influence of an alcohol beverage; subdivision (b), driving with blood-alcohol concentration of 0.08], or 23153 [driving under the influence

of an alcohol beverage, or with a blood-alcohol concentration of 0.08 and doing any act forbidden by law which causes injury]."

Vehicle Code section 23140 states: "(a) It is unlawful for a person under the age of 21 years who has 0.05 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.

"(b) A person may be found to be in violation of subdivision (a) if the person was, at the time of driving, under the age of 21 years and under the influence of, or affected by, an alcoholic beverage regardless of whether a chemical test was made to determine that person's blood-alcohol concentration and if the trier of fact finds that the person has consumed an alcoholic beverage and was driving a vehicle while having a concentration of 0.05 percent or more, by weight, of alcohol in his or her blood."[2]

### 1. *Equal Protection*

■ Appellant argues he was denied equal protection of the law because Penal Code section 191.5, subdivision (a), allowed his conviction for vehicular manslaughter when he, a person under 21 years of age, had a blood-alcohol concentration of 0.05 but allows conviction of a person over 21 years of age only if that person's blood-alcohol concentration is 0.08 or higher.

#### a. *Law*

■ The guarantee of equal protection embodied in the state and federal Constitutions "prohibit[s] the state from arbitrarily discriminating among persons subject to its jurisdiction, and require[s] that classifications between those to whom the state accords and withholds substantial benefits must be reasonably related to a legitimate public purpose." (*In re Kapperman* (1974) 11 Cal.3d 542, 545 [114 Cal.Rptr. 97, 522 P.2d 657]; *Dant* v. *Superior Court* (1998) 61 Cal.App.4th 380, 388 [71 Cal.Rptr.2d 546].)

■ To demonstrate a denial of equal protection, it must first be shown that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. (*Guevara* v. *Superior Court* (1998) 62 Cal.App.4th 864, 871 [73 Cal.Rptr.2d 421].) "The use of the term 'similarly

---

[2]In the information appellant was charged with two counts of gross vehicular manslaughter. The counts alleged appellant was driving in violation of Vehicle Code sections 23140, 23152 and 23153. However, in instructions concerning those counts the jury was told it was necessary they find appellant had violated section 23140. Sections 23152 and 23153 were not mentioned even though appellant was also charged with violations of section 23153, subdivisions (a) and (b).

situated' in this context refers only to the fact that ' "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same". . . .' [Citation.] 'There is always some difference between the two groups which a law treats in an unequal manner since an equal protection claim necessarily asserts that the law in some way distinguishes between the two groups. Thus, an equal protection claim cannot be resolved by simply observing that the members of group A have distinguishing characteristic X while the members of group B lack this characteristic. The "similarly situated" prerequisite simply means that an equal protection claim cannot succeed, and does not require further analysis, unless there is some showing that the two groups are sufficiently similar with respect to the purpose of the law in question that some level of scrutiny is required in order to determine whether the distinction is justified.' [Citation.]" (*Id.* at pp. 871-872.)

■ If it is determined that the law treats similarly situated groups differently, a second level of analysis is required. If the law in question impinges on the exercise of a fundamental right, it is subject to strict scrutiny and will be upheld only if it is necessary to further a compelling state interest. All other legislation satisfies the requirements of equal protection if it bears a rational relationship to a legitimate state purpose. (*People* v. *Bell* (1996) 45 Cal.App.4th 1030, 1046-1047 [53 Cal.Rptr.2d 156].)

In *People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375], our Supreme Court declared that liberty is a fundamental interest and that classifications dealing with it must satisfy the strict scrutiny test. When exactly the strict scrutiny test must be applied to legislation defining crimes or gradations of criminal activity is a matter of dispute. (See *People* v. *Nguyen* (1997) 54 Cal.App.4th 705, 717, fn. 6 [63 Cal.Rptr.2d 173]; *People* v. *Bell, supra,* 45 Cal.App.4th at pp. 1046-1049.)

b. *Discussion*

■ An argument can be made that persons under the age of 21 years who drink and drive are not similarly situated with those over 21 years of age who engage in the same activity. In any event the state has a compelling interest, assuming the classification in question requires the utilization of the strict scrutiny test, in the protection of its citizens from the particular dangers entailed in young persons drinking and driving.

In 1994 the Legislature amended Penal Code section 191.5 by adding as a prerequisite offense for the crime of gross vehicular manslaughter while

intoxicated a violation of Vehicle Code section 23140. (Stats. 1994, ch. 71 § 1.) Significantly, one basis for this amendment was the conclusion that younger drivers, less experienced in driving and in the use of alcoholic beverages, were more likely to be involved in accidents at lower blood-alcohol levels than older drivers. (*Review of Selected 1994 California Legislation* (1994) 26 Pacific L.J. 469, 470-471; Assem. Com. on Pub. Safety, Analysis of Assem. Bill No. 321 (1993-1994 Reg. Sess.) as amended Mar. 3, 1994.)

That basis was a reasonable one. It is recognized that impairment in motor skills and judgment occur at blood-alcohol concentrations as low or lower than 0.05 percent. (See *Burg v. Municipal Court* (1983) 35 Cal.3d 257, 263 [198 Cal.Rptr. 145, 673 P.2d 732]; 2 Erwin, Defense of Drunk Driving Cases (3d ed. 1990) § 14.01-14.02.) It is also recognized that because of a host of age-related factors, young persons who drink and drive are a greater accident risk than older drivers. (2 Erwin, Defense of Drunk Driving Cases, *supra*, § 14.06.)

Penal Code section 191.5, subdivision (a), does not deny equal protection in making liable persons under 21 years who drive with a blood-alcohol concentration of 0.05 and all other drivers are only liable when they drive with a 0.08 concentration.[3]

## 2. *Vagueness*

■  Appellant argues his convictions for Penal Code section 191.5, gross vehicular manslaughter while intoxicated, must be reversed since the underlying offense on which they were predicated (Veh. Code, § 23140, person under 21 years of age, driving with a blood-alcohol concentration of 0.05), is void for vagueness.

---

[3]Appellant notes Penal Code section 191.5 makes liable for vehicular manslaughter those persons under 21 years of age with a blood-alcohol concentration of 0.05 and those over 21 years of age with a blood-alcohol concentration of 0.08. He notes, however that Vehicle Code section 23153, subdivision (b), makes both those over and under 21 years of age guilty of a felony if they drive with a blood-alcohol concentration of 0.08 and cause injury. He states it is absurd that 2 persons, one over 21 years of age and one under 21 years of age, driving with a blood-alcohol level of 0.07 are not guilty of a felony if an accident results in injury, while if the accident results in death, the person over 21 years of age is still not guilty of either a violation of Penal Code section 191.5 or Vehicle Code section 23153, subdivision (b), but the person under 21 years of age is liable under Penal Code section 191.5.

The law routinely treats conduct resulting in death differently from the same conduct that does not result in death. We think it is within the Legislature's prerogative to treat youthful drivers differently when their unlawful behavior results in death.

Vehicle Code section 23140, subdivision (a), states that it is unlawful for a person under 21 years of age to drive with a blood-alcohol concentration of 0.05 or more. Subdivision (b), of that section states in pertinent part that a person may be found in violation of subdivision (a) "if the person was, at the time of the driving, under the age of 21 years and *under the influence of,* or *affected by,* an alcoholic beverage regardless of whether a chemical test was made to determine that person's blood-alcohol concentration." (Italics added.)

Appellant notes while the term "under the influence" has an accepted definition, there is no definition for, and the jury was not instructed concerning how to determine whether he was, "affected by" an alcoholic beverage at the time of the accident. Appellant argues Vehicle Code section 23140 and, therefore, Penal Code section 191.5 are fatally vague since they failed reasonably to inform him of the conduct which would render him liable for punishment. (See *People* v. *Deskin* (1992) 10 Cal.App.4th 1397, 1400 [13 Cal.Rptr.2d 391].)

Whatever the term "affected by" may mean and whether it is vague are issues which do not concern appellant and about which he cannot complain. One may not attack a statute on grounds that are not applicable to him. Courts do not consider constitutional challenges with reference to hypothetical situations. (*People* v. *Ireland* (1995) 33 Cal.App.4th 680, 695 [39 Cal.Rptr.2d 870].)

In this case appellant was not only convicted of two counts of gross vehicular manslaughter while intoxicated, he was also convicted of one count of driving under the influence and causing injury. An element of that offense is driving under the influence of any alcoholic beverage. (Veh. Code, § 21153, subd. (a).) The jury was so instructed and was given the definition of driving under the influence.

Vehicle Code section 23140 states as an element that the driver be "under the influence of" *or* "affected by" an alcoholic beverage. Thus, whatever "affected by" may mean, the section places persons under 21 years of age clearly on notice they will be liable under the section if they drive while "under the influence," a term appellant acknowledges is sufficiently defined. The jury found that at the time of the accident, appellant was driving under the influence of an alcoholic beverage. Any lack of clarity in the term "affected by," therefore, is, in appellant's case, of mere academic interest.

B.-D.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

Judgment affirmed.

Work, Acting P. J., and Huffman, J., concurred.

A petition for a rehearing was denied March 16, 1999, and appellant's petition for review by the Supreme Court was denied May 26, 1999.

*See footnote, *ante*, page 270.