**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

BALDEMAR LANDA,
*Defendant-Appellant.*

No. 09-10429

D.C. No.
5:09-cr-00096-JF-3

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeremy D. Fogel, District Judge, Presiding

Argued and Submitted
July 14, 2010—San Francisco, California

Filed June 15, 2011

Before: Ferdinand F. Fernandez, William A. Fletcher, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman;
Dissent by Judge W. Fletcher

COUNSEL

Steve Emery Teich (argued), San Francisco, California, for defendant-appellant Baldemar Landa.

Merry Jean Chan (argued), Assistant U.S. Attorney, San Francisco, California; Grant P. Fondo, Assistant U.S. Attorney, San Jose, California, for plaintiff-appellee United States of America.

OPINION

TALLMAN, Circuit Judge:

Defendant-Appellant Baldemar Landa pled guilty to violating the Controlled Substances Act and received the mandatory minimum sentence of five years. Landa argues that in computing his sentence, the district court improperly calculated his criminal history score by counting his prior conviction under California Vehicle Code section 23140(a), which makes it unlawful for a person younger than twenty-one years of age to drive with a blood-alcohol content (BAC) of .05% or greater.

The district court determined that Landa's conviction was similar to a conviction for driving while intoxicated or under the influence and thus counted as a criminal history point pursuant to Note 5 of United States Sentencing Guidelines Man-

ual (U.S.S.G.) § 4A1.2.[1] Landa's position is that his violation was actually more like a juvenile status offense, which is never counted under § 4A1.2(c)(2). Applying a "common sense" interpretation to the guidelines and the statute at issue, we conclude that a violation of section 23140(a) is not similar to a juvenile status offense and was properly counted in the calculation of Landa's criminal history score.

## I

In August 2003, a little more than one month after Landa's eighteenth birthday, California Highway Patrol traffic officers arrested him on suspicion of driving under the influence in violation of California Vehicle Code sections 23152(a) and (b).[2] Landa provided two Breathalyzer tests, which reflected blood-alcohol levels of .086% and .087%. Landa pled *nolo contendere* to a violation of California Vehicle Code section 23140(a), a lesser charge classified as an infraction, which penalizes driving with a blood-alcohol content of .05% or greater if the driver is younger than twenty-one years of age. He was sentenced to eighteen months of probation with the option of terminating his probation early by paying a $655 fee. Landa finished paying the fee more than one year later, during his probationary period.

Six years thereafter, Landa was arrested in Sunnyvale, California, on suspicion of violating the federal Controlled Substances Act. He pled guilty to one count of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and (b)(1)(B)(ii); one count of possession with

---

[1]Unless otherwise indicated, all references to the United States Sentencing Guidelines Manual are to the November 1, 2008 version thereof.

[2]Section 23152(a) makes it unlawful for "any person who is under the influence of any alcoholic beverage or drug, or under the combined influence of any alcoholic beverage and drug, to drive a vehicle." Section 23152(b) makes it unlawful for "any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle."

intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii); and aiding and abetting, 18 U.S.C. § 2. At his sentencing hearing, the district court considered whether Landa qualified for "safety valve" relief through 18 U.S.C. § 3553(f). Under that provision, the statutory minimum sentence for violations of certain provisions of the Controlled Substances Act does not apply if the defendant meets five requirements.

Landa's argument concerns the first requirement: that the defendant does not have more than one criminal history point as determined by the sentencing guidelines. He does not challenge the inclusion of one criminal history point for his 2006 misdemeanor conviction of driving with a suspended license. He does, however, challenge the inclusion of a criminal history point for his conviction under California Vehicle Code section 23140(a) prohibiting "a person under the age of 21 years who has 0.05 percent or more, by weight, of alcohol in his or her blood to drive a vehicle."

Landa's argument turns on whether section 23140(a) is similar to a "juvenile status offense." The guidelines specify that "juvenile status offenses and truancy" and "offenses similar to them, by whatever name they are known, *are never counted*." § 4A1.2(c)(2) (emphasis added). However, Note 5, an Application Note in the commentary section of § 4A1.2, further instructs that "[c]onvictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) *are counted*. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c)." U.S.S.G. § 4A1.2 cmt. n.5 (emphasis added).

The district court held that Landa's conviction was not similar to a juvenile[3] status offense, but was instead similar to a

---

[3]We cannot ignore the fact that Landa was not a juvenile at the time that California Highway Patrol officers arrested him. He had recently celebrated his eighteenth birthday. Under California law, he was an adult offender. Cal. Fam. Code §§ 6500, 6501.

conviction for driving under the influence or while intoxicated. Accordingly, the court counted the conviction and denied him "safety valve" relief from the five-year mandatory minimum. Landa appeals.

## II

We review de novo the district court's inclusion of a prior conviction in the Sentencing Guidelines criminal history calculation. *United States v. Grob*, 625 F.3d 1209, 1212-13 (9th Cir. 2010) (citing *United States v. Bays*, 589 F.3d 1035, 1037 (9th Cir. 2009)).

## III

**[1]** Prior to 2007, we applied different approaches to determining whether an offense not listed under U.S.S.G. § 4A1.2(c) is "similar to" a listed offense. *See United States v. Sandoval*, 152 F.3d 1190, 1192 (9th Cir. 1998) (observing that "[t]his court has taken two different approaches to determining whether an offense is 'similar to' those listed in § 4A1.2(c)(2)"); *see also Grob*, 625 F.3d at 1213 ("Before 2007, there was disagreement among the circuits (and even within our own circuit) about what test courts should apply in this context."). Then in 2007, the Sentencing Commission provided clearer guidance. Application Note 12 to § 4A1.2 states:

> In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which

the commission of the offense indicates a likelihood
of recurring criminal conduct.

U.S.S.G. § 4A1.2 cmt. n.12 (2007). We have since embraced
this "common sense" approach. *Grob*, 625 F.3d at 1214.

Landa argues that his driving conviction under section
23140(a) is "similar to" a juvenile status offense and that the
district court erred in concluding that the conviction was simi-
lar to a conviction for driving while intoxicated or under the
influence. The Government counters that Landa's conviction
is not similar to a juvenile status offense, and is, in fact, a con-
viction for driving while intoxicated or under the influence or
—at a minimum—similar to such an offense.

The "juvenile status offense" exception is listed in the text
of the guidelines, while the "driving while intoxicated or
under the influence" provision is included in the commentary
interpreting those guidelines. Because Note 5 states that con-
victions similar to a "driving while intoxicated or under the
influence" offense *are* counted and the text of (c)(2) states
that juvenile status offenses are *never* counted, a potential
conflict exists between the text and the commentary. In such
circumstances, the text of the guidelines governs. *Stinson v.
United States*, 508 U.S. 36, 43 (1993). That means that if
Landa's conviction is similar to a juvenile status offense, it is
not counted, regardless of whether it is also similar to a "driv-
ing while intoxicated or under the influence" offense. We
therefore begin by determining whether Landa's offense is
"similar to" a juvenile status offense.

**A**

Landa—an adult now and at the time of his arrest—argues
that his conviction under California's vehicle code is similar
to a juvenile status offense because section 23140 penalizes
conduct of persons younger than twenty-one for conduct that,
if not for the person's age, would otherwise be legal. Landa

suggests that a juvenile status offense is "a non-serious offense that is . . . illegal only because of the offender's age being under 18." He notes that other circuits have recognized as "non-serious" juvenile status offenses the purchasing of alcohol or cigarettes. *See, e.g.*, *United States v. Ward*, 71 F.3d 262, 263 (7th Cir. 1995) (describing the purchase of alcohol or cigarettes as conduct that is unlawful "solely by virtue of the defendant's juvenile status"). Such activities, Landa claims, are similar to driving with a BAC of at least .05% in that none of the activities are serious, and they are illegal only because the actor is a juvenile.

Landa's argument hinges in large part on the definition of "serious." He argues that under the second prong of Note 12's "common sense" test, we should consider only the degree of punishment in determining the seriousness of his offense and not the dangerous nature of the underlying conduct. He argues that because imprisonment was not an available punishment for Landa's violation, his violation was not serious, making it similar to a juvenile status offense.

**[2]** One significant problem with this argument—and the dissent's analysis—is that it confuses two separate inquiries. It is true that Note 12 instructs us to compare sentences imposed to help determine whether an offense is serious. But it is also true that Note 12 requires us to consider the "elements" of the two offenses and, as we explain below, seriousness is an element of a "juvenile status offense."

Note 12 does not define "juvenile status offense" or what it means to be "serious" for purposes of that term. To determine what constitutes a juvenile status offense for purposes of § 4A1.2(c), and whether Landa's conviction is "non-serious" in the same way that a juvenile status offense is "non-serious," we look not to Note 12, but to federal law. *United States v. Kemp*, 938 F.2d 1020, 1023-24 (9th Cir. 1991); *see also United States v. Martinez*, 905 F.2d 251, 253 (9th Cir. 1990). Once the term is defined, we consider whether it

encompasses the conduct underlying Landa's offense. *Grob*, 625 F.3d at 1217.

We have not yet defined "juvenile status offense." Doing so, as the Sixth Circuit has noted, is particularly difficult because the term encompasses not a single type of offense, but a group of offenses. *See United States v. Cole*, 418 F.3d 592, 599 (6th Cir. 2005). *Black's Law Dictionary* defines a status offense as "a minor's violation of the juvenile code by doing some act that would not be considered illegal if an adult did it, but that indicates that the minor is beyond parental control." *Black's Law Dictionary*, 1188 (9th ed. 2009). Examples include running away from home, truancy, and incorrigibility. *Id.* Other circuits considering the definition in the context of § 4A1.2(c) seem to have recognized that the term "juvenile status offense" depends on both the "age" of the defendant and the "non-serious" nature of the offense.

For example, the Sixth Circuit defines a juvenile status offense as "an offense which is illegal only because of the offender's age (under eighteen) and which is not serious." *Cole*, 418 F.3d at 599. To help gauge whether an offense is "serious," the court in *Cole* considered the severity of available punishments. *Id.* at 600 n.4. In deciding that being a minor in possession was similar to a juvenile status offense where the defendant was nineteen years old at the time of the violation, the Sixth Circuit observed that "[a] jail sentence is not available under Michigan law for a minor in possession of alcohol conviction" except in limited circumstances. *Id.*

Considering whether being a minor in possession of a gun was a juvenile status offense, the Seventh Circuit held that "[t]he obvious meaning [of juvenile status offense] is conduct that would be lawful for an adult and is unlawful solely by virtue of the defendant's juvenile status." *Ward*, 71 F.3d at 263. In assessing whether an offense falls into that category, the court observed that it may be necessary to consider the "gravity" of the underlying conduct. *Id.* at 264 (noting that

mere underage possession of a gun may be a juvenile status offense, but using that gun in connection with the commission of an adult felony would not be).

The First Circuit has concluded that a juvenile status offense must have three elements: (1) the defendant was younger than eighteen years of age, (2) the conduct would have been lawful if engaged in by an adult, and (3) the offense is not serious. *United States v. Correa*, 114 F.3d 314, 318-19 (1st Cir. 1997). The court determines whether an offense is "serious" by appraising the "gravity" of a given crime and making what is "quintessentially a judgment call." *Id.* at 319. In *Correa*, the court found it significant that the illustrations of exempted offenses supplied by the Sentencing Commission in § 4A1.2(c) (e.g., truancy, hitchhiking, loitering, vagrancy, and minor traffic infractions) "all possess a bland quality that helps to distinguish them from more substantial transgressions." *Id.*

In adopting that approach as its own, the Eighth Circuit reasoned that it "fits well with the goals of 'certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records . . . while maintaining . . . flexibility.' " *United States v. Webb*, 218 F.3d 877, 880 (8th Cir. 2000) (quoting 28 U.S.C. § 991(b)(1)(B)). Rejecting the argument that being a minor in possession of alcohol is a juvenile status offense, the Eighth Circuit noted that juvenile status offenses tend to punish offenders based solely on their current state or status while prohibitory offenses "involve a defendant who affirmatively violates a regulatory scheme." *Id.* at 881. The court observed that offenses such as "minor in possession" represent "a violation of a specific liquor control law, rather than being merely reflective of a status crime such as juvenile delinquency or an offense against the public peace." *Id.*

**[3]** We agree with our sister circuits and hold that to qualify as a juvenile status offense, an offense must be (1) com-

mitted by a person younger than eighteen years of age, (2) involve conduct that would be lawful if engaged in by an adult, and (3) be non-serious in nature. We compare those elements to Landa's offense to determine whether they are similar. While Landa was an adult at the time of his arrest, he was underage for purposes of California's drinking laws, which set the minimum age for legal acquisition of alcohol at twenty-one. *See* Cal. Const. art. XX, § 22. Furthermore, section 23140 makes it illegal to drive with a BAC as low as .05%, conduct that is arguably legal for most adults (although depending on the facts could also be evidence of reckless driving in violation of California Vehicle Code section 23103(a)).

**[4]** Those two elements strike us as similar to the first two elements of a juvenile status offense. Therefore, our inquiry into the elements of the offenses focuses mostly on their seriousness. *See Grob*, 625 F.3d at 1216 (noting that "a comparison of the elements of the prior offense with the elements of the exempted offense shows both similarity and difference" (quotation and markings omitted)). In measuring "seriousness," we look at more than just the severity of punishment available; like our sister circuits, we also consider the conduct underlying the offense. *See United States v. Lichtenberg*, 631 F.3d 1021, 1026 (9th Cir. 2011) ("The distinction between the two crimes is reflected in [the defendant]'s actual offense conduct." (citing *Grob*, 625 F.3d at 1217)).

**[5]** It is obvious to us that driving a vehicle after drinking alcohol presents entirely different risks than the act of purchasing alcohol or cigarettes, running away from home, truancy, or incorrigibility. This distinction is underscored by the fact that a conviction under California's vehicular manslaughter laws may be predicated on a violation of section 23140. *See* Cal. Penal Code § 191.5 ("Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140 . . .").

Thus, California lawmakers have expressly recognized that driving in violation of section 23140 can and sometimes does lead directly to the death of others.

In deciding that a BAC of .05% was adequate to support a conviction for vehicular manslaughter "while intoxicated," state lawmakers noted the alarming statistic that "[t]he alcohol involvement rate for young drivers, based on the total licensed driver population, is about twice that of the over 21 age driver," and that, despite the effectiveness of tough drinking laws, "young people under age 21 are still greatly over-represented in alcohol-related crashes and fatalities." *Bill Analysis, AB 321*: *Hearing Before the Assemb. Comm. on Pub. Safety*, 1993-1994 Reg. Sess., 1-2 (as amended March 3, 1994).

To support his position that his conviction was not serious, Landa cites *Cole*, 418 F.3d 592, where, as noted above, the Sixth Circuit held that a nineteen-year-old's conviction for possessing alcohol was similar to a juvenile offense in part because the offense was not "serious." *Id.* at 599-600. But, aside from the fact that *Cole* seems to have placed more weight on the severity of available punishments than we do, *Cole* is virtually inapplicable to the facts here, where Landa was convicted for driving a vehicle after consuming alcohol and having a BAC of more than .05%.

The California legislature did not impose a more severe BAC restriction on drivers younger than twenty-one merely because they are too young to drink—that's the purpose of drinking laws. The legislature imposed this special restriction on driving because—like commercial vehicle drivers, who are prohibited from driving with a BAC of .04% under section 23152(d) of the vehicle code—young drivers pose special risks. *See, e.g.*, *People v. Goslar*, 70 Cal. App. 4th 270, 278 (Cal. Ct. App. 1999) (observing that in amending the vehicular homicide laws to incorporate section 23140, the California legislature considered the fact that "younger drivers, less experienced in driving and in the use of alcoholic beverages,

were more likely to be involved in accidents at lower blood-alcohol levels than older drivers"); *see also Senate Floor Analyses*, *SB 1295*, Reg. Sess. 1993-1994, 2 ("Alcohol is by far the most frequently found drug in fatally injured drivers. No other single drug—not even all other drugs combined—comes close to alcohol. And, of course, young drivers are a major problem in this area." (statement of the Personal Insurance Federation)); *see also* Cal. Veh. Code § 23510(a) (finding that "[y]oung drivers often do not realize the consequences of drinking alcohol or ingesting any other drugs, whether legal or not, and driving a motor vehicle while their physical capabilities to drive safely are impaired by those substances").

As for Landa's argument that the punishment imposed on him was not serious, the guidelines themselves suggest that it was severe enough to distinguish it from a "minor" offense. In § 4A1.2, subsection (c)(1) distinguishes between certain minor offenses that are not counted and offenses where the sentence imposed was a term of probation of more than one year or a term of imprisonment of at least thirty days. While "juvenile status offense" is not listed in subsection (c)(1), the guidelines clearly recognize that certain types of petty offenses are only counted where the defendant received a sentence of more than one year's probation, as occurred here.

**[6]** Landa argues that because juvenile status offenses are *never* counted under the plain language of subsection (c)(2), it is irrelevant that subsection (c)(1) recognizes that sentences involving probationary periods of more than one year should be counted. Landa would be correct if we were trying to determine whether a juvenile status offense with a probationary period of eighteen months should be counted. But that is not our task. It is uncontested that Landa is not a juvenile and was not convicted of a juvenile status offense. The question before us is whether his conviction is "similar" to such an offense. To answer that question, it is appropriate to consider the language in (c)(1) to help gauge whether the punishment

imposed on Landa indicates a serious offense or whether, instead, it is an offense of "minor significance to the goals of sentencing." *Martinez*, 905 F.2d at 253 (9th Cir. 1990). Landa was sentenced to probation for eighteen months, terminable upon payment of a fee, which he paid more than one year into his probationary period. His sentence is more suggestive of a serious offense than a minor offense. *See* § 4A1.2(c)(1).

Neither does the fact that a conviction under section 23140 is an infraction that results in probation instead of imprisonment establish that it is a non-serious offense. *See Sandoval*, 152 F.3d at 1192-93 (finding that petty theft is not "similar to" the offenses listed in § 4A1.2(c)(2) even though it "was charged as an infraction, resulting in a relatively light penalty").

**[7]** We also think it relevant that many of the consequences flowing from a conviction under section 23140 are exactly the same as those assigned to "driving under the influence" sections of the vehicle code. *See, e.g.,* Cal. Veh. Code § 1808 (specifying that conviction records for violations of section 23140, 23152 (driving under the influence), or 23153 (driving under the influence and causing bodily injury to another person) are available for ten years). Section 14602.8 of the vehicle code also allows for immediate removal and seizure of vehicles driven by persons suspected of being under the influence of alcohol or drugs if those persons have been convicted of violating section 23140, 23152, or 23153. Cal. Veh. Code § 14602.8(a)(1). Additionally, section 13353 of the code allows the State to suspend a person's privilege to operate a motor vehicle for up to three years where the person refuses to complete a chemical test, is suspected of drinking and driving, and has a prior conviction under section 23140, 23152, or 23153. Cal. Veh. Code § 13353(a). We also note that the penalties for violations of 23140, 23152, and 23153 are all included in a division of the vehicle code entitled "Sentencing for Driving While Under the Influence," Cal. Veh. Code Div. 11.5, and that all three offenses share as an

available punishment completion of an educational "driving under the influence" program. *See* Cal. Veh. Code §§ 23502(a), 23538(b), 23556(b)(1).

**[8]** That California's lawmakers so frequently lump together consequences for driving under the influence and violations of section 23140 suggests that the legislature perceives a violation of that section as more serious than a juvenile status offense. It also suggests that section 23140 is not a mere status offense, but part of the state's scheme for regulating driving under the influence. *See also United States v. Gomez-Leon*, 545 F.3d 777, 785 (9th Cir. 2008) (recognizing that under California law, violating section 23140 is equivalent to "driving a vehicle while under the influence of drugs or alcohol in violation of the California vehicle code"); *Review of 1986 Selected California Legislation*, 18 Pac. L.J. 433, 738-39 (explaining that enactment of section 23140 and other sections of the vehicle code "*expands existing law* [which prohibits any person from driving a vehicle while under the influence of alcohol or with a specified blood-alcohol level] by prohibiting a minor from driving a vehicle with a blood alcohol level of 0.05% or more, by weight" (emphasis added)).

Turning to culpability and whether Landa's violation of section 23140 predicts future criminality, we overlook for the moment that in order to violate section 23140, a person has already broken two laws: drinking alcohol under age and driving with a BAC of at least .05%. We think it telling that Landa's conduct would have been illegal regardless of his age. *See Ward*, 71 F.3d at 264 (noting that it is proper to consider the defendant's underlying conduct where the offense in question "can be committed by conduct that varies from the trivial to the grave [because] the significance of the prior conviction as a predictor of recidivist potential—the primary reason for using criminal history to increase a defendant's sentence . . . cannot be determined" (internal citations omitted)); *see also Grob*, 625 F.3d at 1217 (considering "the cir-

cumstances present" to determine whether a prior conviction suggested a likelihood of recurring criminal conduct).

Landa was convicted of driving with a BAC of at least .05%. His Breathalyzer tests revealed that he actually drove with a BAC of well over .08%. Even if we agreed that illegally consuming alcohol and then driving with a BAC of .05% was not predictive of future criminality, the fact that Landa far exceeded this limit supports our conclusion that the culpability of his actions are not similar to a juvenile status offense and that his conduct is indicative of future criminal behavior.

The fact that, with section 23140, state lawmakers attempted to address a public safety threat by imposing more severe restrictions on a known risk group does not minimize the serious nature of the targeted activity. If anything, it underscores it. A violation of section 23140 amounts to significantly more than a "relatively minor breach of the peace." *See Grob*, 625 F.3d at 1216. Getting behind the wheel of a car and taking to the road after consuming alcohol is more serious than running away from home, truancy, incorrigibility, or the purchasing of alcohol or cigarettes. We conclude that Landa's conduct lacks the "bland quality" of other offenses listed in § 4A1.2(c)(2) (i.e., fish and game violations, hitchhiking, local ordinance violations, loitering, minor traffic infractions, public intoxication, and vagrancy) and rises to the level of a substantial transgression.

**[9]** We hold that Landa's conviction is not similar to a juvenile status offense for purposes of § 4A1.2(c)(2). Landa does not argue that his offense falls under any other exception. Therefore, the district court properly counted the conviction in calculating Landa's criminal history score. *See* U.S.S.G. § 4A1.2(c) (stating that "[s]entences for misdemeanor and petty offenses are counted" unless an exception listed in subsection (c)(1) or subsection (c)(2) applies).

### IV

We are not convinced that Landa's violation of section 23140 is similar to a juvenile status offense. Indeed, it would defy common sense to conclude that a law designed to prevent young and inexperienced drivers from taking to the roads after consuming alcohol is similar to a juvenile status offense simply because it properly targets the most dangerous demographic group.[4]

Because Landa does not argue that his offense falls under any other applicable exception, our task is complete.[5] In light of our disposition that Landa cannot meet all five requirements for "safety valve" relief, we need not decide whether his failure to timely debrief before sentencing also renders him ineligible. **AFFIRMED.**

---

W. FLETCHER, Circuit Judge, dissenting:

Defendant Landa appeals a five-year mandatory minimum

---

[4]We do not foreclose the possibility that other offenses committed by those older than eighteen years may be "similar to" a juvenile status offense. We merely disagree with the dissent, for the reasons we have articulated, that "[t]he only difference between Landa's offense and true juvenile status offense is that the age threshold is 21 rather than 18." *See* Dissent at 8129.

[5]The dissent states that in summarizing the district court's approach and the Government's arguments we somehow suggest that we agree with the Government that Landa's violation must be counted because it is a driving-under-the-influence offense within the meaning of Application Note 5. *See* Dissent at 8130. To be clear, we do not reach that question because, as we explain *supra*, the only exception the appellant argues applies is the "similar to a juvenile status offense" exception in the Guidelines themselves, and that exception trumps Application Note 5. If Landa's offense is similar to a juvenile status offense, it is not counted. If it is *not* similar to a juvenile status offense, it is. The lengthy discourse by the dissent regarding Application Note 5 is simply irrelevant.

sentence imposed following his guilty plea to violations of the federal Controlled Substances Act. He argues that the district court should not have assigned a criminal history point for his earlier conviction of an infraction under California law for driving a vehicle while under the age of 21 and having a blood alcohol level of 0.05% or more. If that criminal history point had not been assigned, the district court would not have been required to impose the mandatory minimum sentence. The majority concludes that the district court was correct in assigning the additional point. I disagree and respectfully dissent.

## I.   Discussion

Chapter Four of the Sentencing Guidelines Manual sets forth a detailed scheme for determining a defendant's criminal history category. Points are assigned for sentences imposed for prior convictions, sentences of probation, and certain other factors. *See* U.S.S.G. § 4A1.1. Some prior convictions, either because they are too minor or too remote in time, or because of some other reason, are not counted.

The district court assigned Landa one criminal history point for his prior conviction for violating California Vehicle Code § 23140(a). It did so under U.S.S.G. § 4A1.1(c), which provides for the addition of one point for each "prior sentence" of probation. *See* U.S.S.G. § 4A1.1 cmt. background. Under U.S.S.G. § 4A1.2(c)(1) and (2), however, sentences for certain minor offenses are not counted.

### A.   Section 4A1.2(c)(1)

Section 4A1.2(c)(1) of the Guidelines lists a series of misdemeanor and petty offenses. Those listed offenses and "offenses similar to them" are generally not counted, but they are counted when a term of probation of more than a year or a term of imprisonment of at least thirty days was imposed, or when the prior offense was similar to the "instant offense."

The listed misdemeanor offenses include several driving-related offenses: "Careless or reckless driving," "Driving without a license or with a revoked or suspended license," and "Leaving the scene of an accident."

The government argues that Landa's violation of § 23140(a) is sufficiently similar to the listed offenses in § 4A1.2(c)(1) that he should receive a point. Landa was sentenced to 18 months' probation, which he could have terminated at any time by paying $655. He paid the full amount, but not until he had already been on probation for more than a year. Because Landa's actual term of probation (rather than the term of probation he could have served if he had paid the $655 earlier) was more than a year, I am willing to assume that his sentence of probation was over a year for purposes of § 4A1.2(c)(1). However, his violation of § 23140(a) was not sufficiently similar to any of the listed offenses to come within the guideline. A conviction under § 23140(a) requires only proof of a blood alcohol content over .05% and an age under 21. Careless or reckless driving is not established by such a conviction beyond what may be inferred from blood alcohol content and age. The offenses of driving without a license or a revoked or suspended license and leaving the scene of an accident have no similarity to a violation of § 23140(a).

## B.   Section 4A1.2(c)(2)

Section 4A1.2(c)(2) of the Guidelines presents a closer case. That section provides that "[s]entences for the following prior offenses and offenses similar to them, by whatever name they are known, are *never* counted," regardless of the sentence or term of probation imposed. *Id.* (emphasis added). The list of never-counted offenses in § 4A1.2(c)(2) includes "juvenile status offenses and truancy," "minor traffic infractions," and offenses "similar to" them. Because of the "similar to" clause, an offense need not appear on the list by name in order

for it to be excluded. *Id.* I address in turn "juvenile status offenses" and offenses "similar" to them.

### 1.    Juvenile Status Offenses

The Guidelines do not define "juvenile status offenses," and we have not previously adopted a definition of the term. Other circuits have grappled with questions concerning the term's meaning, including the question we face here — whether the term applies to a conviction for a crime that includes as an element the defendant's youth, but was committed when the defendant was 18 or older. The majority has adopted the First Circuit's definition of "juvenile status offenses" articulated in *United States v. Correa*, 114 F.3d 314, 318-19 (1st Cir. 1997). I agree with the majority that this is the appropriate definition. I agree, further, that Landa's conviction under § 23140(a) was not a conviction for a "juvenile status offense" under this definition.

### 2.    "Similar To"

The critical question is whether Landa's offense was "similar to" a juvenile status offense. In the years after the adoption of the Guidelines, the courts of appeals developed different approaches for determining the meaning of "similar to" in § 4A1.2(c). *See United States v. Grob*, 625 F.3d 1209, 1213-14 (9th Cir. 2010) (discussing approaches used in different circuits). In 2007, the Sentencing Commission promulgated a test in an Application Note to § 4A1.2 for determining similarity:

> In determining whether an unlisted offense is similar to an offense listed in subdivision (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punish-

ment; (iii) the elements of the offense; (iv) the level
of culpability involved; and (v) the degree to which
the commission of the offense indicates a likelihood
of recurring criminal conduct.

U.S.S.G. Supp. to app. C amend. 709 (codified at § 4A1.2
cmt. n.12). We have held that the "common sense approach"
in Application Note 12 is now the governing test for similar-
ity. *Grob*, 625 F.3d at 1213-14; *see also United States v. Lich-
tenberg*, ___ F.3d ___, 2011 U.S. App. LEXIS 1698 (9th Cir.
Jan. 27, 2011). Our common sense evaluation is guided by the
factors enumerated in the Application Note. *Grob,* 625 F.3d
at 1215-19.

   The first factor in determining similarity under the Applica-
tion Note to § 4A1.2 is a "comparison of punishments
imposed for the listed and unlisted offenses." For purposes of
comparing a listed offense and a potentially similar unlisted
offense, we look first to any federal definition of the listed
offense. *Grob*, 625 F.3d at 1215. If there is no federal defini-
tion, we look to either the Model Penal Code or state defini-
tion. *Id.* However, none of those sources contains a single
definition of "juvenile status offense." California law does,
however, specify certain prototypical juvenile status offenses,
including underage possession of tobacco and truancy by
minors. *Cf. United States v. Ward*, 71 F.3d 262, 263 (7th Cir.
1995) (purchase of cigarettes is prototypical juvenile status
offense); *United States v. Miller*, 987 F.2d 1462, 1465-66
(10th Cir. 1993) (truancy and loitering are juvenile status
offenses). Given that we are asked to determine the similarity
of a California offense to juvenile status offenses, we should
primarily rest our analysis on a comparison of Landa's
offense to these California offenses. Following our recent
decision in Grob, we should focus on the punishment actually
imposed for the unlisted offense, rather than the maximum
possible punishment, because "the level of punishment
imposed for a particular offense serves as a reasonable proxy
for the perceived severity of the crime." 625 F.3d at 1216

(internal quotation marks and alteration omitted). The defendant in *Grob* had been convicted of an act of criminal mischief, which ordinarily carried potential penalties of $1,500 and six months' imprisonment. The question was whether criminal mischief was similar to the offense of disorderly conduct, which ordinarily carried a possible sentence of $100 and ten days imprisonment under state law. Because Grob himself had actually been fined only $130 for his act of criminal mischief, the court held that the two offenses were similar, despite the large difference in the available maximum sentences. *Id.* at 1216.

The maximum penalty for a violation of California Vehicle Code § 23140(a) is a fine ($100 for a first offense, $200 for a second offense, and $300 thereafter), loss of the offender's driver's license for one year, and the requirement that the offender attend a driving-under-the-influence program. Cal. Veh. Code §§ 13202.5, 23140, 23502, 42001.25. A violation of § 23140(a) is not punishable by imprisonment. Cal. Penal Code § 19.6. The penalty actually imposed on Landa was 18 months' probation, to terminate immediately upon the payment of $665. Because Landa was a first-time offender, his fine should have been $100. The record does not give any indication how the court arrived at $665. I assume that $555 of that amount was attributable to court fees. The record does not reflect whether Landa's license was suspended or whether he was ordered to attend a remedial program, but since those penalties are automatic it is likely that they were imposed. Cal. Veh. Code §§ 13202.5, 23502(a).

By comparison, the penalty for underage tobacco possession is a $75 fine or 30 hours of community service. Cal. Penal Code. § 308(b). The maximum penalties for truancy, after repeated violations, are a $100 fine, suspension of the student's driver's license, compulsory attendance at a truancy prevention program, 20-40 hours of community service, or adjudication as a ward of the court. Cal. Educ. Code § 48264.5.

The penalties imposed on Landa suggest that the California court regarded his offense of violating § 23140(a) as similar to true juvenile status offenses under California law. The fine is in the same range as the fines for those offenses. Driver's license suspension and attendance in a corrective program is a part of the punishment for one of those offenses. The punishment actually imposed on Landa thus falls into the normal range for juvenile status offenses.[1] I note, by comparison, that the penalty for a single violation of California Vehicle Code § 23152, which criminalizes driving by an adult with a blood alcohol content greater than .08%, is jail time of at least 96 hours and up to 6 months, attendance at a corrective program, a 6-month driver's license suspension, a fine of up to $1000 (plus court fees), and probation up to 5 years. Cal. Veh. Code §§ 23536, 23600, 13352(a)(1). Repeated offenses under California Vehicle Code § 23152 are punished by up to three years in prison, a $5,000 fine, and a five-year driver's license suspension. Cal. Veh. Code §§ 23566, 13352(a)(6). Landa's punishment is well below that range.

The second factor is the seriousness of the offense. The relatively light sentence imposed — probation that could be terminated upon payment of a small fine made larger by court fees — indicates that Landa's violation was not regarded by the California sentencing court as a serious offense. *See Grob*, 625 F.3d at 1216 ("By imposing such a light sentence, moreover, the Montana court deemed Grob's crime fairly minor."). I emphasize that driving under the influence of alcohol is not a trivial matter. But Application Note 12 directs us to consider the seriousness of the particular offense *as indicated by the punishment chosen by the court*, not by an assessment of the

---

[1] I do not compare Landa's offense with underage possession or purchase of alcohol because the age cutoff for that offense is 21 rather than 18. I note, however, that the penalty for those offenses is $250 or 24-32 hours of community service "at an alcohol or drug treatment program" (for a second or subsequent offense, $500 or 36-48 hours of community service), in addition to a mandatory one-year driver's license suspension. Cal. Bus. & Prof. Code § 25662.

dangerousness or gravity of the behavior divorced from the defendant who was before the sentencing court.

The third factor is the elements of the offense. There is no generic "juvenile status offense" that is defined by a single list of elements. However, all juvenile status offenses share one defining element: they criminalize behavior that would not be criminal if the offender were older. As we have just held, true juvenile status offenses are those that are committed by persons under 18. Driving with blood alcohol content greater than .05% but less than .08% is criminal only for drivers under 21. Driving with blood alcohol content over .08%, on the other hand, is criminal regardless of the offender's age.

In criminalizing driving with a blood alcohol content over .05% and choosing a cutoff age of 21, the legislature criminalized a risky activity because it judged that people under that age were less mature, and less able to handle alcohol, than those over the age of 21. So while Landa's offense is not a juvenile status offense because he was over 18, its elements are conceptually similar to those of a juvenile status offense. Its similarity is highlighted by the fact that § 23140(a) is contained in an article entitled "Juvenile offenses involving alcohol."

The majority assumes that it has been established, for purposes of sentencing, that Landa's blood alcohol content was in excess of .08%. It writes, "We think it telling that Landa's conduct would have been illegal regardless of his age." Maj. op. at 8118. The police reported that Landa's Breathalyzer measurements were .086% and .087%, but Landa never admitted that those measurements were correct. Landa pled guilty only to driving with a blood alcohol content in excess of .05%. It is established law that for purposes of sentencing, when applying the modified categorical test, we cannot consider information that merely appears in a police report as having been established as true. *Shepard v. United States*, 544 U.S. 13, 22-26 (2005).

The fourth factor is the offender's culpability. The fact that § 23140(a) is an infraction, the least serious type of criminal offense, indicates that the legislature viewed the culpability of someone violating this provision as relatively minor. Drinking and driving may nonetheless be properly regarded as a more culpable activity than other juvenile status offenses. In most of those offenses, the offender puts only himself at risk. But a young and inexperienced driver who is intoxicated, even though to a lesser degree than would violate the law for an adult, puts others at risk. *See People v. Goslar*, 70 Cal. App. 4th 270, 278 (1999) (noting that the California legislature has recognized that "younger drivers, less experienced in driving and in the use of alcoholic beverages, were more likely to be involved in accidents at lower blood-alcohol levels than older drivers").

The fifth factor is "the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct." The *Grob* court explained that this inquiry is forward-looking. "[R]ather than employing hindsight in light of the instant offense, when determining whether a prior offense demonstrated a risk of recurring criminal conduct, courts should look only to the circumstances present at the time of that prior offense." 625 F.3d at 1217. There is no evidence that a violation of § 23410(a) is anything more than weakly predictive of Landa's later offenses.

In my view, the five factors slightly favor Landa. The comparison of punishments, the seriousness of the offense, and the elements of the offense favor Landa. The level of culpability disfavors him. The predictiveness of the offense is unclear. As a matter of common sense — the ultimate touchstone of the inquiry — I am persuaded that Landa's offense in violation of § 23140(a) is "similar to" a juvenile status offense. Section 23140(a) criminalizes behavior that would be legal if engaged in by a person above 21, and Landa pled guilty only to a violation of that section. He did not plead guilty to an offense of driving with a blood alcohol level that

would be illegal for someone over 21. The only difference between Landa's offense and true juvenile status offense is that the age threshold is 21 rather than 18. In my view, those three years do not make § 23140(a) substantially different from other juvenile status offenses. Indeed, if offenses with an age cutoff of 21 rather than 18 are not similar to juvenile status offenses, the "similar to" category for juvenile status offenses may turn out to be a null set.

My holding would be consistent with, though not compelled by, the limited caselaw of our sister circuits. In *United States v. Cole*, 418 F.3d 592, 598-600 (6th Cir. 2005), the Sixth Circuit reasoned that a 19-year-old's conviction for possessing alcohol, when the legal drinking age was 21, was similar to a "juvenile status offense" and therefore could not be counted as a criminal history point. In *Whitney*, 229 F.3d 1296, 1309-10 (10th Cir. 2000) the Tenth Circuit hypothesized that a similar conviction could meet the definition of "juvenile status offense" and concluded that the state of the law was "unsettled," although it declined to reverse a district court's contrary conclusion on plain error review.

The Eighth Circuit has left open the possibility that offenses committed by those over 18 may be "similar to" juvenile status offenses. In *Webb*, 218 F.3d 877, 880 (8th Cir. 2000), that court held that the conviction of a 19-year-old for underage possession of alcohol was not a "juvenile status offense," but it did not consider whether it was similar to a juvenile status offense, apparently because the defendant had not made that argument. In the later case *United States v. Johnston*, 533 F.3d 972, 977-78 (8th Cir. 2008), the Eighth Circuit noted that *Webb* had not decided the "similar to" question and quoted the Sixth Circuit's analysis in *Cole*, but declined to reach the question because any error would have been harmless.

### C.   DUI Offenses

Application Note 5 in the Commentary to the Guidelines provides that ordinary drinking and driving convictions *are* counted:

> *Sentences for Driving While Intoxicated or Under the Influence.*— Convictions for driving while intoxicated or under the influence (and similar offenses by whatever name they are known) are counted. Such offenses are not minor traffic infractions within the meaning of § 4A1.2(c).

U.S.S.G. § 4A1.2 cmt. n.5. The government argues under Note 5 that Landa's violation of § 23140(a) must be counted because it is a driving-under-the-influence ("DUI") offense within the meaning of the Note. The majority suggests its agreement with the government's argument. *See* Maj. op. at 8108.

The government's argument proves too much. It is uncontested that if a violation of § 23140(a) is committed by someone under 18, the violation is a true juvenile status offense. If such a violation of § 23140(a) were a DUI under Application Note 5, there would be a conflict between the Guidelines and the Commentary because juvenile status offenses are explicitly excluded by the text of § 4A1.2(c)(2) while DUI offenses are counted under Note 5. When the text of the Guidelines and a portion of the Commentary conflict, the text controls. *Stinson v. United States*, 508 U.S. 36, 45 (1993). Therefore, the textual command that juvenile status offenses "are never counted" trumps any potentially conflicting provision in the Commentary.

Excluding such a violation of § 23140(a) from the scope of Note 5 is also a logical reading of the commentary. Note 5 makes clear that DUIs are not "minor traffic infractions" and for that reason should be counted. By contrast, the rationale

for not counting juvenile status offenses is that they are minor infractions. If the drafters had intended to include underage drinking-and-driving within its definition of DUI, they would likely have given us additional language explicitly so providing.

I do not conclude that DUIs based on a blood alcohol content of .08% or over — which are violations of California Vehicle Code § 23152 rather than § 23140(a) — are excluded if committed by a juvenile. A violation of § 23152 is not a juvenile status offense. Rather, it is adult felony, even if committed by someone under 18, because it depends entirely on blood alcohol content; the age of the offender is irrelevant.

A true juvenile status offense — a violation of § 23140(a) committed by someone under 18 — is excluded from the scope of § 4A1.2(c)(2). The Guideline text does not distinguish between true juvenile status offenses and "similar to" offenses. The text states only that "prior offenses and offenses similar to them . . . are never counted." That is, § 4A1.2(c)(2) prescribes the same treatment for juvenile status and for offenses "similar to" them. Since the true juvenile status offense is always excluded from criminal history category computation, "similar to" offenses must be excluded as well.

### D.   Harmless Error

We reverse and remand for resentencing on the basis of an error in calculating the Guidelines only when the error affected the sentence imposed. *See Cruz-Gramajo*, 570 F.3d at 1167. The government argues that even if Landa's violation of § 23140(a) is not countable as a criminal history point, the error is harmless because Landa is in any event ineligible for the safety valve because he has not debriefed the government. I disagree that the error was harmless.

A defendant bears the burden of proving that he is eligible for safety valve relief. *United States v. Diaz-Cardenas*, 351

F.3d 404, 409 (9th Cir. 2003). The fifth requirement for safety valve relief provides that the defendant may be eligible for relief if

> not later than the time of the sentencing hearing the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(5).

We have interpreted this provision several times. As we have explained, the purpose of the safety valve statute is not, like 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 (the cooperation provisions), to "provid[e] the government a means to reward a defendant for supplying useful information," nor, like U.S.S.G. § 3E1.1 (the acceptance of responsibility provisions), to "spar[e] the government the trouble of preparing for and proceeding with trial." *United States v. Shrestha*, 86 F.3d 935, 940 (9th Cir. 1996). Rather, its purpose is to enable a sentencing court to go below a statutory minimum in sentencing a defendant who played a minor role and who "made a good-faith effort to cooperate with the government." *Id.*

We expounded on the meaning of "good-faith effort to cooperate" in *United States v. Meija-Pimental*. In that case, the defendant was sentenced to 210 months, but his sentence was reversed on direct appeal because of the district court's failure to resolve significant objections to the Pre-Sentence Report. The district court imposed the same sentence on remand, and the court of appeals again reversed and remanded for resentencing in light of *Booker* and *Ameline*. *United States*

*v. Mejia-Pimental*, 477 F.3d 1100 (9th Cir. 2007). Before his third sentencing hearing, and after all the relevant information had already been revealed, the defendant sought for the first time to provide a safety valve proffer. The government refused the proffer. Mejia-Pimental wrote a letter to the government anyway, detailing his involvement and his knowledge of others' involvement.

We reversed the district court's finding in *Mejia-Pimental* that the defendant had not satisfied the debriefing requirement. We held that "to demonstrate 'good faith,' a defendant need only show that by the time of sentencing he has 'truthfully provided to the Government all information and evidence [he] has concerning the offense or offenses.' " *Id.* at 1102 (quoting 18 U.S.C. § 3553(f)(5)). As long as the "ultimate proffer is truthful and complete," the defendant "has satisfied the fifth safety valve criterion, regardless of his timing or motivations." *Id.* at 1106. We explained that the district court may consider tardiness or reluctance in cooperation in tailoring an individual's sentence under 18 U.S.C. § 3553(a), but that "early and consistent cooperation is 'not a precondition for safety valve relief.' " *Id.* at 1108 (quoting *United States v. Tournier*, 171 F.3d 645, 647 (8th Cir. 1999)).

*Mejia-Pimental* makes clear that the requirement that the defendant provide information "not later than the time of the sentencing hearing" does not refer only to the initial sentencing in a case where multiple sentencings take place. Mejia-Pimental initially declined to debrief and instead appealed his sentence on other grounds. When the court of appeals reversed and remanded for resentencing on other grounds, Mejia-Pimental obtained another opportunity to debrief prior to his resentencing. Landa should be entitled to the same opportunity.

## Conclusion

Because Landa's offense under California Vehicle Code § 23140(a) is "similar to" a "juvenile status offense," it should

not have been counted as a criminal history point. I would remand the case so that Landa may, if he chooses, debrief the government. At that point, the district court would be able to determine his eligibility for safety valve relief.

I respectfully dissent.